KELLEY, GLOVER & VALE REALTY COMPANY ET AL. *v.*
BRUCK ET AL.

[No. 16,708.   Filed May 5, 1941.   Rehearing denied June 30, 1941.
Transfer denied October 7, 1941.]

*Jay E. Darlington* and *Crumpacker & Friedrich*, all of Hammond, for appellants.

*Albert H. Gavit*, of Gary, *Hume L. Sammons* and *Parker D. Hancock*, both of Kentland, for appellee.

FLANAGAN, J.—This is an action by appellant Kelley, Glover. & Vale Realty Company, a corporation, hereinafter referred to as Kelley Company, against appellee to quiet title to certain real estate in Gary, Indiana, on which is situate an apartment building. Its title is based upon two tax deeds executed on March 1, 1932, and May 10, 1932, respectively, and issued pursuant to tax sales held on February 10, 1930, at which the property was purchased by appellant Kelley, Glover & Vale, Inc. Tax certificates were issued to the latter company and thereafter assigned to Kelley Company.

Title to the involved real estate was in the Avalon Apartments Company of Gary, Incorporated, prior to the tax sale. After the commencement of this action, Paul Bruck was, in a different action, appointed receiver of the Avalon Apartments Company of Gary, Incorporated, and as such receiver, by proper substitution, became the defendant in the trial court and is the appellee herein. Appellee will hereinafter be referred to as the Avalon Company.

Appellee filed an answer of general denial and an affirmative answer and cross-complaint, both of which latter alleged that the Kelley companies were ineligible to acquire title to the property by tax deed, and that there were certain specified defects in the tax sale proceedings. The cross-complaint made Kelley, Glover & Vale, Inc., hereinafter referred to as Kelley Inc., a party and sought a declaration that the tax deed was invalid and an accounting between both appellants and appellee.

The court entered general findings in favor of appellee and in its decree granted the relief prayed in appellee's cross-complaint. Thereafter it held a hearing on the matter of accounting, after which the court found that after giving credit for the amount paid at the tax sales, with twenty per cent interest per annum, the appellant Kelley Company was indebted to appellee in the sum of $2,343.86, and that appellee was indebted to appellant Kelley Inc. in the sum of $73.86. Judgment was rendered accordingly.

Appellants filed their motion for a new trial for the reasons: (1) That the decision is not sustained by sufficient evidence; and (2) is contrary to law; (3) that the court erred in overruling appellants' motion to exclude Albert H. Gavit from acting as counsel for appellee at the trial; and (4) that the court erred in holding a separate hearing on the accounting matter after disposing of the cause in chief.

Appellants' joint and several motion for a new trial was overruled, and this action of the trial court is assigned as error on appeal. The above stated third and fourth reasons for a new trial are also made the subjects of separate assignments of error.

Under their assignments that the decision of the court is not sustained by sufficient evidence and is contrary to law, appellants contend: (1) That there is no evidence to sustain a finding either that appellants were ineligible to acquire title through the tax deed or that there were any defects in the tax sales proceedings; and (2) that tender of the amounts paid at the tax sales is a prerequisite to an attack upon the validity of the sales, and that the evidence shows that no such tender was made.

The evidence discloses that the Kelley companies are companion companies, each organized in 1923, and each

operated at all times from the same office. J. J. Kelley has at all times been president, and W. J. Glover has at all· times been vice-president and treasurer of both companies. Kelley, ·Glover & Vale have at all times constituted the board of directors of both companies.

The Avalon Company was organized in 1927, for the purpose of buying the involved real estate and building and operating thereon the Avalon Apartments. The capital stock of the Avalon company was divided into three classes: Common, $50,000; first preferred, $65,000; and second preferred, $30,000. The Meyer-Kiser Bank of Indianapolis purchased all the first preferred stock for re-sale to its customers. One, Charles Baran, who advanced the balance of the required funds, received all the second preferred stock and all the common stock except qualifying shares. Baran agreed to advance any funds needed from time to time to protect the first preferred stockholders, whose rights were prior to those of both the common stockholders and the holders of the second preferred stock, and delivered to the Meyer-Kiser Bank irrevocable proxies to be used by the nominee of that bank to control the management whenever the first preferred stock became in default.

In 1929, Baran transferred all of his second preferred stock to Kelley Inc. to secure an obligation to it. At about the same time, he sold all his common stock to one Bali, who, in turn, pledged it to one Lipinski to secure an obligation.

J. J. Kelley was one of the organizers of the Avalon company, and, at all times, its secretary and one of the three members of its board of directors. After September 1930, W. J. Glover was president and manager of the company and a member of its board of directors.

Kelley Inc., beginning in 1929, received the rentals for the company and made the disbursements for

expenses and for payments of dividends to first preferred stockholders, through the Meyer-Kiser Bank, the registrar, and received a commission of five per cent on all sums so handled.

Illustrative of the extent to which it was in charge of the affairs of the Avalon company is the following letter which it sent on November 12, 1929, to the Meyer-Kiser Bank:

"We finally succeeded in getting Paul Lipinski to pay $1,000.00 which brings the principal which was due May 1st up to date.

"We are including in this payment $32.17 past due interest from May 1st to date. We are also paying $945.00 dividend due November 1st, all of which is included in our check for $1,977.17, inclosed.

"This payment takes all of the funds we have on hand in the rental account. We shall have to advance money for oil and other operating expenses until the December rents come in.

"We understand the taxes have not been paid, but think perhaps, we can compel Lipinski to pay them. At least we would be safe in allowing them to be delinquent until just prior to the tax sale in February, at which time we can take such action as is necessary.

"There is one request that Lipinski makes, and I believe it is a reasonable one to grant, namely, to defer sinking fund payments because it would be impossible, as you can well see, to make such payments out of income, and as Lipinski is more or less responsible, I would like to work him into the property by degrees, and particularly with the knowledge that all of the rentals are collected by us and are being applied to bringing this deferred stock issue up to date, and which will require Lipinski from time to time to kick in funds other than the $1,000.00 item which he pays today."

On February 10, 1930, Kelley Inc. bought the involved property at tax sales for the total amount of $2,857.82. It continued to collect and to distribute the

rents thereafter and to receive its commission of five per cent until long after Kelley Company obtained its tax deeds. So far as the record discloses, neither the first preferred stockholders nor anyone on their behalf was ever advised of the tax sales until 1934. Between the time of the tax sales and obtaining the deeds, over $8,000.00 was distributed to first preferred stockholders and $1,300.00 to Kelley Inc. as a dividend on second preferred stock, which amount was retained by it and applied on the obligation of Baran.

On September 24, 1934, for the first time, so far as the evidence discloses, Glover notified the stockholders of the tax sales and of the tax deeds, and stated in the notice, that unless "each and every stockholder" pay an assessment equal to fifteen per cent on the stock owned, "legal action to protect the interest of the tax deed holder is imminent." At that time, the notice stated, the company had on hand $3,173.39 in cash.

One who has a duty to pay the taxes on property cannot acquire title to such property at tax sales. *Cooper* v. *Jackson* (1884), 99 Ind. 566; *Schenck* v. *Kelley* (1882), 88 Ind. 444.

Neither can one who occupies a position of trust and confidence with another person so acquire title to property of such other person which is the subject-matter of such relationship. *Wilkerson* v. *Duerson* (1917), 177 Ky. 696, 198 S. W. 13; *Laundy* v. *Girdner* (1922) (Mo.), 238 S. W. 788; 13 Am. Juris., § 1007, p. 959. The Supreme Court of this state directed attention to this rule in the case of *Willard* v. *Ames* (1892), 130 Ind. 351, 353, 30 N. E. 210, when it said:

"It is well settled that one in possession of land, under covenant to pay taxes, can not permit the land to be sold, and acquire title against the rightful owner by becoming the purchaser at a tax sale. . . .

"This doctrine has been extended to include agents and attorneys, tenants in common, tenants for life, mortgagors, and other lienholders."

Under the evidence as above set forth, the court was justified in finding that appellants not only received and distributed the rents from the involved property, but were actually managing the property and the affairs of the Avalon company, and that they were not eligible to acquire title to the property through tax deeds.

The rule requiring tender as a prerequisite to attacking a title under a tax deed does not apply to one who was not originally eligible to acquire such title. *Mendenhall* v. *Hall* (1890), 134 U. S. 559, 33 L. Ed. 1012.

The question, as to whether in such case the purchaser is entitled to receive the statutory interest of twenty per cent per annum on the purchase price, is not before us.

In view of the above conclusions, it is not necessary for us to consider the questions of defects in the tax sale proceedings.

Appellants contend that the court erred in overruling their motion to exclude Albert H. Gavit from acting as attorney for appellee at the trial. On this motion, the court heard evidence. We have examined that evidence and find it sufficient to sustain the finding of the trial court. This court cannot weigh the evidence in such case. *Logan, Admx.* v. *Logan* (1933), 97 Ind. App. 209, 180 N. E. 32.

Appellants next contend that the court erred in first, upon trial, entering its finding and decree that appellee was entitled to an accounting, and thereafter, in a separate trial, hearing evidence on the matter of accounts. We do not agree with this con-

tention.   We think the court followed the proper procedure.   The issue presented, in this regard, on the original trial was whether or not appellee was entitled to an accounting.   Equity takes cognizance of matters of account because of the multifarious and complicated mutual dealings involved.   *Cummins* v. *White and Another* (1837), 4 Blackf. 356.   It would be unexpeditious, to say the least, to enter into the frequently extended hearings involved before determining that they are proper.   The trial court followed the generally approved procedure.   1 Am. Juris., § 61, p. 306; *Buffington* v. *Green* (1926), 221 Mo. A. 695, 285 S. W. 531; *Wampum Oil Corporation* v. *Lago Petroleum Corp.* (1933), 19 Del. Ch. R. 124, 163 A. 622; *Benham, Zeigler & Co. Inc.* v. *Mouledoux* (1932), 175 La. 711, 144 So. 428; *Barnes* v. *Barnes* (1918), 282 Ill. 593, 118 N. E. 1004.   We cannot see wherein appellants were thereby harmed.

Finding no reversible error in the record, judgment is affirmed.

Curtis, C. J., not participating.

NOTE.—Reported in 33 N. E. (2d) 777.

ON PETITION FOR REHEARING.

FLANAGAN, J.—Appellants have petitioned for a rehearing.   Our attention has been directed to the following statement contained in our opinion in this case:

> "Neither can one who occupies a position of trust and confidence with another person so acquire title (by purchase at tax sale) to property of such other person which is the subject-matter of such relationship."

It is suggested that the above statement standing alone might be construed as prohibiting so acquiring

title under any and all circumstances and that such a rule might be too broad.

The statement must, of course, be read against the background of the facts in the case. It correctly states the rule applicable in cases where one occupying a position of trust and confidence, by doing an act which equity and good conscience require that he not do in view of the fiduciary position he occupies, or by failing to do an act which equity and good conscience requires that he do, creates a situation whereby he may, by acquiring the very property which is the subject-matter of the relationship, unjustly enrich himself at the expense of the person who has rested faith and confidence in him. Justice Cardozo, in discussing the position of one in a fiduciary relationship in the case of *Meinhard* v. *Salmon* (1928), 249 N. Y. 458, 164 N. E. 545, 546, used the following language:

> "Many forms of conduct permissable in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. (Citation) Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd."

Petition for rehearing denied.

Stevenson, J. concurs in result.

NOTE.—Reported in 35 N. E. (2d) 120.