GARB-KO, INC v LANSING-LEWIS SERVICES, INC

Docket No. 91808. Submitted July 22, 1987, at Lansing. Decided April 18, 1988. Leave to appeal applied for.

Garb-Ko, Inc., Lansing-Lewis Services, Inc., and Action Auto, Inc., entered into a written agreement providing for the sale of a gasoline station by Lansing-Lewis and Action Auto to Garb-Ko. Unknown to the parties at the time the agreement was executed, but discovered before the sale could be completed, was the fact that the gasoline storage tanks on the property were leaking and contaminating the ground and groundwater. Lansing-Lewis and Action Auto proposed that Garb-Ko could either terminate the buy-sell agreement or proceed with the sale only if it agreed to fully indemnify Action Auto for all costs and penalties arising out of the gasoline contamination. Garb-Ko brought an action in Ingham Circuit Court against Lansing-Lewis and Action Auto and obtained a temporary restraining order enjoining defendants from selling or encumbering the property. Following a hearing, the trial court, James T. Kallman, J., dissolved the restraining order and refused to issue an injunction. Plaintiff subsequently amended its complaint to seek specific performance of the agreement. After a bench trial, the court dismissed plaintiff's claim for specific performance, finding that a mutual mistake affecting a basic, material assumption of the contract had occurred and that it would be unreasonable and unjust to enforce the terms of the agreement. The trial court subsequently denied motions for a new trial or to alter or amend the judgment. Plaintiff appealed.

The Court of Appeals *held:*

A contract is voidable by the party adversely affected by a mutual mistake where the mistake relates to a basic assumption of the parties upon which the contract is made and which materially affects the agreed performances of the parties. In this case, the parties were under a mutual mistake of fact as to the condition of the property at the time they entered into the

REFERENCES

Am Jur 2d, Contracts §§ 143-145, 148.

When statute of limitations begins to run against action to recover money paid by mistake. 79 ALR3d 754.

buy-sell agreement and defendants, because of their continuing liability for the contamination under federal and state environmental-protection statutes, are adversely affected by the mistake and are properly entitled to rescission as the trial court determined.

Affirmed.

1. CONTRACTS — MISTAKE — RESCISSION.

A contract may be rescinded because of a mutual mistake, but the remedy is granted only in the sound discretion of the court.

2. CONTRACTS — MISTAKE — RESCISSION.

A contract is voidable by the party adversely affected by a mutual mistake where the mistake relates to a basic assumption of the parties upon which the contract is made and which materially affects the agreed performances of the parties; however, rescission is not available to relieve a party who has assumed the risk of loss in connection with the mistake.

*Honigman, Miller, Schwartz & Cohn* (by *Gary A. Trepod* and *Frederick M. Baker, Jr.*), for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *John B. Curcio, James G. Fausone* and *Mark G. Hess*), for defendants.

Before: DANHOF, C.J., and G. R. MCDONALD and E. M. THOMAS,* JJ.

E. M. THOMAS, J. Plaintiff appeals as of right from the trial court's order denying specific performance of a sales contract against defendants and the trial court's order denying plaintiff's motion for a new trial or to alter or amend the judgment. We affirm.

This case presents an anomalous situation in which the seller seeks to rescind a contract for the sale of land based on a defect in the property discovered after the sales agreement was entered into. Garb-Ko and Action Auto, the parent com-

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

pany of Lansing-Lewis Services, Inc., entered into a buy-sell agreement on or about February 11, 1985, by which plaintiff was to purchase a gas station and automotive parts store in East Lansing from defendants for $320,000. The buy-sell agreement contained an "as is" clause. The site was to be used for a 7-Eleven store. The property has seven underground storage tanks which hold four thousand to six thousand gallons of gasoline each.

Garb-Ko did not inquire into the environmental condition of the property or the integrity of the gasoline tanks prior to making the offer to purchase. Action Auto subsequently learned that the gasoline storage tanks on the property might be leaking and contaminating the ground and groundwater. Neither party was aware of any contamination on the property at the time the buy-sell agreement was executed. Garb-Ko was informed of the contamination on the property in a letter dated April 5, 1985, and given the option of terminating the agreement or providing Action Auto with full indemnification for all costs and penalties arising out of any gasoline storage leakage and proceeding with the sale. Garb-Ko did not agree to indemnify the sellers for the costs and expenses arising out of the contamination and did not accept the seller's offer to terminate the agreement. Instead, Garb-Ko requested additional information before making a decision.

Negotiations between the parties were unsuccessful and in July, 1985, Garb-Ko filed suit and obtained a temporary restraining order enjoining the sellers from selling or encumbering the land. At a show cause hearing on August 7, 1985, the court refused to issue a temporary injunction and dissolved the TRO. On September 13, 1985, Garb-Ko amended its complaint to seek specific performance of the buy-sell agreement.

In the meantime, Action Auto set out to determine the extent of the contamination problem and hired Horner Creative Metals to test the tanks. Horner confirmed leakage so severe that it was unable to measure the magnitude of the leakage. Action Auto also hired a hydrogeologic consulting firm, EDI Engineering and Science, to study the site's contamination and to recommend a cleanup solution. EDI confirmed the presence of gasoline constituents in the soil. However, the full extent of the contamination could not be ascertained without further costly testing.

A bench trial was held on December 23, 1985, to determine whether specific performance of the buy-sell agreement should be ordered. The court found that a mutual mistake affecting a basic, material assumption of the contract had occurred and that it would be unreasonable and unjust to enforce the terms of the buy-sell agreement. In an order dated January 24, 1986, the court denied plaintiff's request for specific performance and dismissed plaintiff's complaint. On March 31, 1986, the court denied plaintiff's request for a new trial or to alter or amend judgment.

A contract may be rescinded because of a mutual mistake of the parties; however, this equitable remedy is granted only in the sound discretion of the trial court. *Lenawee Co Bd of Health v Messerly,* 417 Mich 17, 26; 331 NW2d 203 (1982). The determination whether plaintiffs are entitled to rescission involves a bifurcated inquiry: (1) was there a mistaken belief entertained by one or both of the parties to a contract? and (2) if so, what is the legal significance of the mistaken belief? *Messerly, supra* at 24; *Dingeman v Reffitt,* 152 Mich App 350, 355; 393 NW2d 632 (1986).

In its opinion and order, the trial court found that the parties had clearly entered into the buy-

sell agreement under a serious mistake of fact since, at the time the agreement was signed, neither party was aware of the gasoline leakage. We agree.

A contractual mistake "is a belief not in accord with the facts." *Messerly, supra* at 24, citing 1 Restatement Contracts, 2d, § 151, p 383. This mistake must relate to a fact in existence at the time the contract is executed. *Messerly, supra* at 24. The testimony at trial clearly revealed that there had been a large gasoline leak on the property that could result in contamination of both soil and groundwater. The testimony also indicated that none of the contracting parties were aware of that fact at the time they executed the buy-sell agreement. We defer to the trial court's finding that both parties were under a mutual mistake of fact as to the environmental condition of the property at the time they entered into the buy-sell agreement.

We also agree with the trial court's ruling that rescission should be granted in the instant case. In *Messerly, supra,* our Supreme Court stated that legal or equitable remedies are not mandated in every case in which a mutual mistake has been established; rather, a case-by-case analysis should be done and rescission should be granted only when the mutual mistake is a legally significant mistake. *Messerly, supra* at 24. 1 Restatement Contracts, 2d, § 152(1), p 385, delineates the legal significance of the mistake:

> [W]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of mistake under the rule stated in § 154.

The *Messerly* Court adopted this Restatement approach and stated that rescission should only be granted "when the mistake relates to a basic assumption of the parties upon which the contract is made, and which materially affects the agreed performances of the parties." *Messerly, supra* at 29-30.

Here, the mutual mistake relates to a basic assumption of the parties upon which the contract was made. Additionally, this mistake materially affects the agreed performance of the parties. In any commercial real estate sale, the parties assume and desire that the sale will result in a complete transfer of rights, obligations, and responsibilities. The purchaser does not want the seller involved in, or disrupting, the new business in any way. Likewise, the seller desires to sever all ties with the property and any obligations. Under the common law, a sale of property resulted in such a transfer of rights and obligations. However, environmental-protection statutes have altered the common law and made previous owners of sites liable for environmental contamination. See MCL 299.601 *et seq.*; MSA 13.32(1) *et seq.*; 42 USC 9601 *et seq.* Under these laws, a previous owner may be required to conduct a site investigation and cleanup and would have a continuing liability after contaminated property is sold. It is this continuing responsibility for the land in question which requires us to affirm the trial court's ruling rescinding the buy-sell agreement and denying plaintiff's request for specific performance of the agreement.

We are not persuaded by plaintiff that the "as is" clause contained in the buy-sell agreement controls and bars rescission of the contract. Paragraph 11 of the buy-sell agreement states:

> PURCHASER HAS PERSONALLY EXAMINED THIS PROP-
> ERTY AND AGREES TO ACCEPT SAME IN ITS PRESENT
> CONDITION EXCEPT AS MAY BE SPECIFIED HEREIN AND
> AGREES THAT THERE ARE NO OTHER ADDITIONAL
> WRITTEN OR ORAL UNDERSTANDINGS.

Under this clause, the risk was clearly allocated to the purchaser. 1 Restatement Contracts, 2d, § 152, p 385 states that when a legally significant mutual mistake has occurred, the contract is voidable by the adversely affected party, unless he bears the risk of the mistake. However, the purchaser is not the adversely affected party; thus, the "as is" clause holds no significance. Here, due to the state and federal environmental-protection statutes which impose continuing liability after the sale of the land on defendant sellers for contamination that occurred while defendants owned the property, it is clear that they are the adversely affected party. The "as is" clause of the buy-sell agreement would not operate to relieve defendant sellers of their liability under these statutes. Had plaintiff agreed to indemnify Action Auto for all costs and penalties arising out of any gasoline storage leakage, rescission possibly would not have been granted. However, since plaintiff did not do so, defendant sellers remain the adversely affected party having incurred the "burden" imposed by law of cleaning up the contamination. The contract is voidable under § 152(1) of the Restatement.

In this case, equity requires that we affirm the trial court's ruling. Defendants have a continuing obligation and responsibility for the contaminated property. One expert estimated that the cost of cleanup could be anywhere from $100,000 to $1,000,000. In order to contain further cleanup costs and third-party claims arising from use of the contaminated land, defendants need control

over the use of the property. Sale to plaintiff would not give them such control.

Indeed, this case is unique since rarely does a purchaser of property, after discovering that the property is contaminated, request that the sale continue and ask the court to order specific performance of the contract. However, due to the continuing nature of the obligation and responsibilities defendants have over the environmental contamination of the property, we conclude that the trial court did not err in ordering rescission of the contract and denying plaintiff's request for specific performance.

Affirmed.