Terry L. KETTERY and Lisa Kettery,
Appellants–Defendants,

v.

Julie A. HECK (Power),
Appellee–Plaintiff.

No. 73A04–9104–CV–109.

Court of Appeals of Indiana,
Fourth District.

March 17, 1992.

J. Bradley Schooley, Shelbyville, for appellants-defendants.

Charles T. Bate, Bate, Harrold & Meltzer, Shelbyville, for appellee-plaintiff.

CHEZEM, Judge.

## Case Summary

Defendants–Appellants, Terry and Lisa Kettery, appeal from the judgment entered in favor of the Plaintiff–Appellee, Julie A. Heck. We affirm.

## Issues

The Ketterys present seven (7) issues for our review, which we consolidate and restate as follows:

I. Did the trial court err in determining "Terry Kettery breached the terms of the Land Contracts of August 7, 1981, and April 30, 1985, by his failure to pay real estate taxes due and owing on the 4.13 acre tract," and that "Terry Kettery's failure to pay real estate taxes ... was the proximate cause of the real estate being sold at tax sale"?

II. Did the trial court err in granting judgment for Heck on Count II of her Complaint?

## Facts and Procedural History

In 1981, Heck entered into an agreement to "exchange" real estate with Terry and Karen Kettery. Heck received the Ketterys' residence in Indianapolis; the Ketterys received Heck's residence on 1 acre in Shelby County, and they would purchase the remaining 4.13 acres from Heck under a land contract with a balloon payment due on April 30, 1985. The contract specifically provided that the Ketterys "shall pay the taxes on the real estate beginning with the November installment of 1981 taxes and all installments of taxes payable thereafter."

Terry and Karen were divorced in 1982. Terry then purchased Karen's interest in the 1 acre tract and the land contract in early 1984. Karen deeded her interest in the tract, and assigned her interest in the land contract, to Terry on February 24, 1984.

In July of 1986, Terry married Lisa Kettery. Lisa had been living with Terry on the 1 acre tract since July of 1983. They both worked for Allison Division of General Motors Corporation in Indianapolis.

Terry was unable to make the balloon payment on the land contract due in 1985. Heck did not sue; rather, she agreed to a new land contract with Terry, whereby the balance due was amortized and would be repaid with interest over a 10 year period. As security for the debt, Terry then gave Heck a mortgage on the 1 acre tract. This new contract, like the old one, provided that Terry would pay all of the real estate taxes on the property.

Terry failed to pay any of the real estate taxes due on the 4.13 acre tract of land. He did not receive notice of any real estate tax deficiency, tax sale, or that taxes were due and owing on the property. Further, the county auditor sent notices of the tax delinquency and tax sale to Heck at her old address—R.R. # 1, Box 363A, Fountaintown, Indiana. These notices were sent by certified mail, and were returned to the auditor as undeliverable. Heck did not receive any tax statements for the property during the time in question, or notice of any real estate tax deficiency or tax sale.

Charles and Margaret Kocher purchased the 4.13 acre tract at a tax sale held on August 12, 1985. After the two year redemption period expired, the Kochers were issued a tax deed for the property, which they recorded on September 30, 1987. They purchased the property for $107.86.

In September, 1987, the Kochers informed the Ketterys that they now owned the 4.13 acre tract. The Ketterys did not notify Heck about the tax sale or that the Kochers now owned the tract of land, but instead sought legal counsel. On October 29, 1987, Lisa Kettery purchased the Kochers' interest in the 4.13 acres for $3,250. On November 4, 1987, the Ketterys' counsel notified Heck of the recent developments by letter, stating in part:

It is apparent that you cannot possibly perform your obligations under the terms of the contract and no longer hold any title to the subject real estate. I have advised Mr. Kettery to declare the contract to be in breach; cease all payments under the contract and demand that you make restitution to him for the

payments which he has made under its terms which are approximately $7,700.00.

Heck responded by filing a two-count Complaint. Count I was directed against Terry; it alleged breach of the land contract and sought to foreclose the mortgage on the 1 acre tract. The amount owed under the contract was alleged as $16,363.85. Count II was directed against Terry and Lisa, and alleged they "intentionally concealed from [Heck] the fact that Terry had not paid the real estate taxes," and "conspired to defraud [Heck] by intentionally concealing the aforementioned facts from [Heck] and by deeding said real estate to Lisa Kettery, attempting to make it impossible for [Heck] to perform under the contract."

The bench trial occurred on September 11, 1990. After taking the matter under advisement, the trial court issued Findings of Fact, Conclusions of Law and Judgment, which state in part:

### CONCLUSIONS OF LAW

\* \* \* \* \* \*

2. Terry Kettery breached the terms of the Land Contracts of August 7, 1981, and April 30, 1985, by his failure to pay real estate taxes due and owing on the 4.13 acre tract from November 1981.

3. Terry Kettery's failure to pay real estate taxes as they became due ultimately was the proximate cause of the real estate being sold at tax sale.

4. The real estate mortgage on the 1 acre tract dated April 30, 1985, and recorded March 3, 1988, is a valid security interest and said mortgage should be foreclosed against said real estate ...

5. Equity requires that a judgment be entered on behalf of the plaintiff, plaintiff [sic] Julie A. Heck having sustained her burden of proof under Count I of her amended complaint.

\* \* \* \* \* \*

7. The law is with the plaintiff and against the defendant Terry Kettery upon the issues formed by his counterclaim and defendant Terry Kettery should take nothing by his counterclaim

and judgment should be entered against the defendant thereon.

\* \* \* \* \* \*

10. On Count II, the Court finds for the plaintiff and against Lisa Kettery and Terry Kettery and orders the deed reformed accordingly ...

The trial court then entered judgment in favor of Heck for $22,304.92, which "shall be reduced by the $3,250 paid by Lisa Kettery to [the] Kochers." The Ketterys now appeal.

### Discussion and Decision

This is an appeal from a judgment entered in a bench trial, and our standard of review on appeal is well-established. Since the trial court entered findings of fact and conclusions of law, we apply the following two-tier standard of review: whether the evidence supports the findings, and whether the findings support the judgment. *National Advertising Co. v. Wilson Auto Parts, Inc.* (1991), Ind.App., 569 N.E.2d 997, 1000. The court's findings and conclusions will be set aside only if they are "clearly erroneous," that is, that the record contains no facts or inferences supporting them. *W & W Equipment Co., Inc. v. Mink* (1991), Ind.App., 568 N.E.2d 564, 566, *reh. denied, trans. denied; Keystone Square v. Marsh Supermarkets, Inc.* (1984), Ind.App., 459 N.E.2d 420, 422. A judgment is "clearly erroneous" when a review of the record leaves us with a firm conviction that a mistake has been made. *Porter County Board of Zoning Appeals v. Bolde* (1988), Ind.App., 530 N.E.2d 1212, 1215. We will not reverse unless the trial court's finding was clearly against the logic and effect of the facts, or reasonable, probable deductions to be drawn therefrom. *National Advertising*, 569 N.E.2d at 1000; *Eyler v. Eyler* (1986), Ind., 492 N.E.2d 1071, 1073.

The Ketterys first argue "the most significant error of the trial court is [its determination] that 'Terry's failure to pay real estate taxes as they came due ultimately was the proximate cause of the real estate being sold at tax sale.'" In particular, the

Ketterys argue that Heck had an affirmative duty under the terms of the land contracts "to obtain and forward copies of the tax statements" to them, citing paragraph 2(a):

> **(a) Taxes.** Purchaser shall pay the taxes on the Real Estate beginning with the real estate taxes due and payable on November, 1981, and all installments of taxes payable thereafter. Vendor covenants and agrees to pay, prior to delinquency, all prior real estate taxes on the Real Estate. Purchaser, upon written notice to Vendor and at Purchaser's expense, may contest on Vendor's and Purchaser's behalf, any changes in the assessed valuation of the Real Estate. *Vendor shall forward or cause to be forwarded to Purchaser a copy of all statements for real estate taxes on the Real Estate payable by Purchaser, as received,* and Purchaser shall provide to Vendor upon request evidence of payment of such taxes.

[Emphasis supplied.]

This appeal hinges on the meaning of the phrase: "Vendor shall forward or cause to be forwarded to Purchaser a copy of all statements for real estate taxes on the Real Estate payable by Purchaser, as received." The Ketterys argue that the phrase means that Heck was required to obtain and forward to them *all* of the tax statements for the property, and that they were to pay the real estate taxes "as received," or as the tax statements were received, from Heck. On the other hand, Heck argues the phrase means that she was required to forward only the tax statements she received; thus, because she did not receive any statements, she did not violate the requirement imposed by this phrase.

■ We agree with Heck. The phrase "as received" relates back to the word "statements" in the sentence in question. The phrase is clear and unambiguous, and under such circumstances, "[it is] conclusive and we will not construe the contract or look at [any] extrinsic evidence, but will merely apply the contractual provisions." *Jackson v. DeFabis* (1990), Ind.App., 553

N.E.2d 1212, 1215. As noted in *Romain v. A. Howard Wholesale Co.* (1987), Ind.App., 506 N.E.2d 1124, 1126, *reh. denied, trans. denied,* when the language of a contract is unambiguous, "[it] is conclusive upon the parties and the courts." *See also, Scott v. Anderson Newspapers, Inc.* (1985), Ind. App., 477 N.E.2d 553, 559, *reh. denied, trans. denied.*

Here, the terms of the land contracts only required Heck to forward the tax statements she actually received. Therefore, because she did not receive any tax statements on the 4.13 acre tract after executing the land contracts, she did not breach or violate the requirement that she forward any tax statements "as received." Accordingly, we decline the Ketterys' invitation to rewrite the contracts to say that Heck had a duty to obtain and forward all of the tax statements for the property.

■ Furthermore, the trial court properly determined that Terry had breached the land contracts by failing to pay the real estate taxes since 1981. The contracts specifically and unequivocally provided that, "[Terry] shall pay the taxes on the Real Estate beginning with the real estate taxes due and payable on November, 1981, and all installments of taxes payable thereafter."

## II

The Ketterys next argue that "[t]here is no evidence which supports any legal or equitable theory for relief upon Count II, and no evidence from which the [trial] court could find that Lisa Kettery or Terry Kettery committed any fraud, constructive fraud, conspiracy, breach of contract or any other illegal or actionable act."

■ We first note the pertinent findings of fact entered by the trial court, as follows:

### FINDINGS OF FACT

\* \* \* \* \* \*

15. Neither Terry Kettery nor Lisa Kettery notified nor attempted to notify Julie A. Heck of the alleged Kocher interest

prior to Lisa Kettery obtaining a Deed from the Kochers on October 29, 1987; Terry and Lisa discussed with their attorney whether they should notify Heck of the Kocher claim; Terry and Lisa knew Heck's address at all times because they had made regular payments to her since May of 1985. (Testimony of Heck and Terry; answers to interrogatories of Terry and Lisa.)

16. On October 19, 1987, Terry and Lisa discussed with their attorney (both present) what the effect of Lisa Kettery's purchase from the Kochers would have on the Land Contract with Heck. (Testimony of Terry; answers to interrogatories of Terry and Lisa.)

17. On October 29, 1987, Kochers deed 4.13 [acre] tract to Lisa in exchange for payment of $3,250.00. (Testimony of Terry; Exhibit P.)

18. On November 5, 1987, Heck receives letter from attorney [for the Ketterys] dated November 4, 1987. (Testimony [of] Heck; Exhibit O.)

\* \* \* \* \* \*

20. Lisa Kettery knew Terry Kettery was making payments on the Land Contract to Heck in regard to the real estate that was deeded to her from the Kochers. (Answers to interrogatories of Lisa.)

The evidence in the record supports these findings. Terry and Lisa made no attempt to notify Heck of the tax sale and tax deed until after Lisa had purchased the 4.13 acre tract from the Kochers for $3,250. Further, Terry and Lisa admitted that they discussed with their attorney what effect Lisa's purchase of the property would have on Terry's land contract with Heck.

We also note that the findings support the judgment granted for Heck on Count II. While this court has never addressed or reviewed a factual situation like the one in this case, we find the following to be instructive:

[I]t is a well-established general rule that a tenant is estopped from denying the title of his landlord existing at the commencement of the tenancy, or setting up to defeat it an incompatible and para-mount title in a third person or one acquired by the tenant during the tenancy. Also, it is well-settled that a tenant who has agreed to pay taxes on the demised premises, or who is legally bound to pay such taxes, cannot acquire a valid title to the premises by a purchase at a tax sale, made in his own name, or in the name of another person for his benefit.

In the case of *Schenck et al. v. Kelley et al.*, 1882, 88 Ind. 444, our Supreme Court held that a mortgagee in possession could not set up against his mortgagor a tax title he acquired while he so held the property. In the case of *Cooper v. Jackson*, 1884, 99 Ind. 566, it was held a mortgagor of his land or his grantee remaining in possession owes a duty to the mortgagee to pay the taxes and if he fails to do so and then either directly or indirectly purchases the land at a tax sale, he acquires no rights against the mortgagee. In the case of *Kelley, Glover & Vale Realty Company et al. v. Bruck et al.*, 1941, 109 Ind.App. 440, 33 N.E.2d 777, 35 N.E.2d 120, this court held, one who occupies a position of trust and confidence with another cannot acquire by a tax deed title to the property of another which is the subject matter of the relationship.

The foregoing rules are based on fundamental principles of honesty and justice. We are of the opinion they are controlling in the instant case. Belle Kase, in order to insure the appellees' ancestor a home for life, leased the premises to her for life on condition she pay the taxes, upkeep, etc. Veronica Meier was obligated to pay the taxes on this property. She failed to do so. It would be unconscionable to permit her to take advantage of her breach of duty to acquire title to her landlord's property.

*Davey v. Meier* (1947), 117 Ind.App. 577, 73 N.E.2d 56, 58, *reh. denied* [citations omitted].

Here, Lisa was able to purchase the 4.13 acre tract because her husband breached his duty to pay the real estate taxes. Thus, to allow her to keep the property would be unconscionable, especially consid-

ering she not only knew about the land contract, she also had contributed funds to the property before purchasing it from the Kochers. As noted by Terry at trial, "[Lisa] put a lot of, of, uh, her money and time in to this the same as I have." Accordingly, the trial court properly entered judgment for Heck.

Affirmed.

SHARPNACK, J., concurring.

MILLER, J., concurring in result.