**WESTERN OHIO PIZZA, INC., MAS Realty, and D.D., Inc., Appellants–Plaintiffs,**

v.

**CLARK OIL & REFINING CORPORATION, Appellee– Defendant.**

**No. 49A05–9802–CV–87.**

Court of Appeals of Indiana.

Jan. 27, 1999.

Peter M. Racher, James A. Joven, Plews Shadley Racher & Braun, Indianapolis, Attorney for Appellant.

Jeffrey B. Katz, Michigan City, Attorney for Appellee.

## OPINION

ROBB, Judge.

### Case Summary

Appellants–Plaintiffs, Western Ohio Pizza, Inc., MAS Realty, and D.D., Inc. (collectively "Western"), appeal the trial court's judgment in favor of Clark Oil & Refining Corp. ("Clark"), which determined that Clark was not liable to Western for damages related to clean-up of leaking underground storage tanks ("USTs") on property which Clark conveyed to Western. We affirm.

### Issues

Western raises three issues for our review which we restate as:

1. Whether the trial court properly found that the contract for sale of the property was clear and unambiguous in transferring liability to Western, and properly concluded that the Underground Storage Tank Act in effect at the time expressly permitted such transfer of liability;

2. Whether the trial court properly concluded that Western was not entitled to reimbursement from Clark for clean-up costs and attorney fees because the Indiana Department of Environmental Management ("IDEM") did not issue a corrective action order; and,

3. Whether the trial court properly concluded that Western could not recover clean-up costs from Clark under Ind.Code § 13–30–3–13 because Western was not the owner of the property at the time of the leak and there was no proof that Clark dumped any material during the time Western owned the property.

### Facts and Procedural History

The facts most favorable to the judgment show that on July 1, 1988, Western signed a standard Purchase Agreement for the purchase of a lot at 5902 N. Michigan Rd. in Indianapolis from Clark for the construction of a Domino's Pizza store. Clark had not used the property as a gasoline station. The agreement contained the following conditions:

Subject to Bankruptcy Court Approval

. . . .

Buyer is aware underground storage tanks are still on the property and agrees to assume all responsibility for said tanks.

Buyer is accepting the property "as is."

R. 496. On the same day, Western executed an Offer to Purchase prepared by Clark which provided, in part:

2) . . .

SELLER DOES NOT WARRANT, EITHER EXPRESSLY OR IMPLIEDLY, THE CONDITION OR FITNESS OF THE PROPERTY CONVEYED HEREUNDER, ANY SUCH WARRANTY BEING HEREBY EXPRESSLY NEGATED. Buyer, by acceptance hereof, acknowledges that he has made a complete inspection of the above described property, and any improvements and/or equipment located thereon and is in all respects satisfied and accepts said property "AS IS."

. . . .

6) Such improvements as may be located on the property, including ... underground storage tanks and lines ... are to be considered a part of the purchase price....

....

12) ... This agreement is to be merged with the Purchase Agreement....

R. 498. On August 4, 1988, by corporate warranty deed, Clark conveyed the parcel to Western Ohio.

Western's contractor began work on the new store in May or June of 1989 and discovered contaminated soil during excavation work. The soil was tested and reported to IDEM. An IDEM inspector orally ordered Western to remediate the soil. The contaminated soil was removed by an environmental engineering firm. The new facility was completed no later than December 1990.

Clark had previously filed a bankruptcy petition in December of 1987 and the bankruptcy court had authorized the sale of the parcel. On August 16, 1990, Clark was discharged and released under the bankruptcy court's reorganization plan and order.

On March 27, 1991, Western filed its complaint against Clark claiming that Clark is liable to pay for the clean-up of the contaminated soils, for lost profits, and for punitive damages. Clark filed a counterclaim and later moved for summary judgment which motion was denied.

Settlement negotiations took place and a trial date was finally set for November, 1996. Just prior to trial, Clark filed a complaint with the bankruptcy court claiming Western's claim was discharged in bankruptcy and seeking to enjoin the state court action. Clark also filed a motion to dismiss with the trial court. The trial court denied the motion, stating that Clark is barred from asserting discharge in bankruptcy as a defense for failure to affirmatively plead that defense.

Following a bench trial, the trial court entered findings of fact and conclusions of law and entered judgment in favor of Clark.[1] The trial court concluded, in part:

4. ....

The clear and unambiguous language of the Offer to Purchase and the MIBOR Purchase Agreement operate to preclude [Western] from bringing the instant claims against [Clark]. Under the clear language of such contracts, [Western] purchased the property "AS IS." The contracts specifically informed [Western] that underground storage tanks were still on the property and [Western] specifically agreed to assume all responsibility for the underground storage tanks. Moreover, [Western's] agreement to assume responsibility for the tanks was not limited in any way. The contracts clearly shifted responsibility for the underground storage tanks from [Clark] to [Western].

5. Were [Clark] not able to contract away Tank Act liability, [Western] would still be precluded from seeking reimbursement from [Clark] for clean up costs and attorneys fees. The Tank Act in effect at the time of the sale of the property ... provided that if the current owner of an underground storage tank could prove that a release from the tank was caused solely by an act or omission of a third party, the current owner was entitled to recover from the third party its costs incurred in complying with a corrective action order issued by IDEM. The issuance of an order by IDEM is an essential element to recovery of remediation costs from a responsible third party. Because IDEM did not issue an order requiring clean up, [Western is] precluded from seeking reimbursement from Clark for clean up costs under the Pre–1991 Tank Act. The pre–1991 Tank Act did not provide for recovery of attorney's fees.

6. [Western is] also precluded from seeking reimbursement and/or damages from Clark under the amended Tank Act, effective July 1, 1991. The amended Tank Act permits the current tank owner to recover remediation costs and attorneys fees from a responsible third party whether or not IDEM issued an order requiring the current tank owner to take corrective action. All costs of remediating the property were incurred by [Western] prior to July 1, 1991. The 1991 amendment to the Tank Act (permitting recovery from a third party even if clean up is undertaken voluntari-

1. Neither party requested special findings pursuant to Ind. Trial Rule 52(A). R. 1095.

ly) does not apply to clean up costs incurred Prior to July 1, 1991.

7. [Western is] not entitled to recover their remediation costs and attorney's fees from [Clark] pursuant to Indiana Code § 13–7–11–6.... The Illegal Dumping Statute requires proof that a party illegally dumped garbage or other solid waste on the landowner's property without the landowner's consent. This proof necessarily requires that the complaining party actually own the land at the time of the alleged dumping. [Western has] failed to prove that [Clark] dumped any material on the property during the time [Western] owned the property.

R. 448–50 (citations omitted). Western appeals from the trial court's judgment.

### Discussion and Decision

■ This is an appeal from a judgment entered in a bench trial, and our standard of review on appeal is well-established. Because the trial court entered findings of fact and conclusions of law, we apply the following two-tier standard of review: whether the evidence supports the findings, and whether the findings support the judgment. *Kettery v. Heck,* 587 N.E.2d 1365, 1367 (Ind.Ct.App. 1992), *trans. denied.* The court's findings and conclusions will be set aside only if they are clearly erroneous, that is, that the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id. Sua sponte* findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. *Yanoff v. Muncy,* 688 N.E.2d 1259, 1262 (Ind.1997). A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.*

### I.

Western argues that the parties' contract for sale of the real estate is ambiguous and does not explicitly transfer liability for the leaking tanks to Western. Western contends that without a specific provision transferring environmental liabilities, Clark cannot avoid liability to Western for clean up costs.

The Indiana Underground Storage Tank Act provides, in part:

A person who ... undertakes corrective action resulting from a release from an underground storage tank, regardless of whether the corrective action is undertaken voluntarily or under an order issued under this chapter, ... is entitled to receive a contribution from a person who owned or operated the underground storage tank at the time the release occurred.

Ind.Code § 13–23–13–8. Western contends that it is entitled to contribution pursuant to this statute. Clark asserts that Ind.Code § 13–23–13–10 allows for the release of an obligation for contribution. That statute provides, in part: "This section does not bar an agreement to: 1) insure; 2) hold harmless; or 3) indemnify; a party to an agreement for any liability under this article." Ind.Code § 13–23–13–10.

■ Indiana's underground storage tank laws were "drafted in the same language and spirit" as the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq. The Pantry, Inc. v. Stop–N–Go Foods, Inc.,* 777 F.Supp. 713, 721 (S.D.Ind.1991), *modified on denial of reconsideration,* 796 F.Supp. 1164 (S.D.Ind.1992). "Indiana's UST statutes follow the same remedial principles established by CERCLA." *Id.* at 720. "Liability under CERCLA is strict—no showing of negligence is required." *Rodenbeck v. Marathon Petroleum Co.,* 742 F.Supp. 1448, 1456 (N.D.Ind.1990). CERCLA expressly preserves the right of private parties to contractually transfer to or release another from the financial responsibility arising out of CERCLA liability. *Id.* Under 42 U.S.C. § 9607(e)(1), "parties remain liable for response costs in a government-initiated cleanup," but "private parties may contractually transfer to or release another from CERCLA financial responsibilities." [2] *Mobay Corp. v. Allied–Signal, Inc.,* 761 F.Supp. 345, 355 (D.N.J.1991). CERCLA, therefore, does not abrogate the parties' contractual rights. *Rodenbeck,* 742 F.Supp. at 1456.

Western cites several cases, both from federal courts and courts of other states, which

2. United States Code Section 9607(e)(1) is sub-    stantially the same as Ind.Code § 13–23–13–10.

hold that "[w]hile a contract can, under appropriate circumstances, act to preclude recovery of response costs, there must be an express provision which allocates these risks to one of the parties." *Southland Corp. v. Ashland Oil, Inc.*, 696 F.Supp. 994, 1002 (D.N.J.1988). The *Southland* court held that "an 'as is' provision is merely a warranty disclaimer and as such precludes only claims based on breach of warranty." *Id.* at 1001. Such a provision "does not act to shift liability from one party to an agreement to another...." *Id.* Two years after *Southland*, another case from the same court arrived at a similar result regarding a contract which provided: "Premises are sold 'as is.'" *Allied Corp. v. Frola*, 730 F.Supp. 626, 630 (D.N.J. 1990). The *Allied* court agreed that an "'as is' clause preclude[d] any cause of action in contract," but did not extinguish all tort theories of liability. *Id.* The court held that "strict liability may be avoided only by a knowing agreement to accept the risk of an abnormally hazardous activity."[3] *Id.*

■ The majority of the cases cited above deal primarily with liability under CERCLA. However, "the allocation of CERCLA liability is governed by state contract law." *M & M Realty*, 977 F.Supp. at 687. To the extent an analogy with CERCLA is helpful, we must look to Indiana law regarding release or transfer of liability.[4]

■ Whether a contract is ambiguous is a question of law for the court. *Indiana Erectors, Inc. v. Trustees of Indiana University*, 686 N.E.2d 878 (Ind.Ct.App.1997). This court will not construe clear and unambiguous provisions, nor will we add provisions not agreed upon by the parties. *Hyperbaric Oxygen Therapy Systems, Inc. v. St. Joseph Medical Center of Ft. Wayne, Inc.*, 683 N.E.2d 243, 247–48 (Ind.Ct.App.1997), *trans. denied.*

■ "A release is a surrender of a claimant's right to prosecute a cause of action. We construe a release to carry out the intent of the parties to the release. That intent is disclosed by the language the parties used to express their rights and duties considered in light of all the facts and circumstances." *Wright Motors, Inc. v. Marathon Oil Co.*, 631 N.E.2d 923, 925 (Ind.Ct. App.1994) (citations omitted). A release is construed in the same manner as any other contract. *Id.* The construction of a release is a question of law for the court's determination. *Id.*

■ Western argues that we should construe the purchase agreement between it and Clark so as to give effect to the intent of the parties at the time they entered into the contract. Western then asserts that it did not intend to accept responsibility for leaking petroleum, only for the tanks themselves. We decline to consider the extrinsic evidence set forth by Western, as we find the agreement clear and unambiguous. The Purchase Agreement provided that Western agreed "to assume *all* responsibility for said tanks." R. 496 (emphasis added). In addition, the Offer to Purchase mentioned improvements located on the property, including "storage tanks and lines," and stated that Western had made a complete inspection of these improvements. R. 498. In light of these provisions, we cannot say that the "as is" clause "stand[s] alone." *Southland*, 696 F.Supp. at 1001. While we do not go so far as to require that the contract state that the buyer is accepting responsibility for clean-up costs, we do think it clear that when Western accepted responsibility for the tanks and lines, it necessarily accepted responsibility for whatever those tanks and lines contained or had contained.

The trial court did not err, as a matter of law, in finding that the contract for sale of

---

3. *See also M & M Realty Co. v. Eberton Terminal Corp.*, 977 F.Supp. 683 (M.D.Pa.1997); *Robertshaw Controls Co. v. Watts Regulator Co.*, 807 F.Supp. 144 (D.Maine 1992); *Mobay Corp.*, 761 F.Supp. 345; *Channel Master Satellite Systems v. JFD Electronics Corp.*, 702 F.Supp. 1229 (E.D.N.C.1988); *Chemical Waste Mgmt., Inc. v. Armstrong World Indus. Inc.*, 669 F.Supp. 1285 (E.D.Pa.1987); *Garb–Ko, Inc. v. Lansing–Lewis Servs., Inc.*, 167 Mich.App. 779, 423 N.W.2d 355 (Mich.App.Ct.1988).

· But *cf. AM Int'l v. International Forging Equip.*, 982 F.2d 989 (6th Cir.1993); *Niecko v. Emro Marketing Co.*, 769 F.Supp. 973 (E.D.Mich. 1991), *aff'd*, 973 F.2d 1296 (6th Cir.1992); *CPC Int'l v. Aerojet–General Corp.*, 759 F.Supp. 1269 (W.D.Mich.1991); *FMC Corp. v. Northern Pump Co.*, 668 F.Supp. 1285 (D.Minn.1987).

4. Western has not raised any claim under CERCLA.

the property was clear and unambiguous and that the parties' contract transferred responsibility for the costs of remediation to Western.

## II.

Western argues that the trial court erred in concluding (apparently in the alternative) that Western was not entitled to contribution from Clark because no corrective action had been ordered by IDEM regarding the clean-up. We disagree.

■ As stated above, a person who undertakes clean-up of a release from an underground storage tank may seek contribution from a former owner or operator "regardless of whether the corrective action is undertaken voluntarily or under order...." Ind. Code § 13–23–13–8, *formerly* § 13–7–20–21. Prior to amendment, "the statute allowed a current owner to recover from the prior owner only after the state required the current owner to take a corrective action." *The Pantry,* 777 F.Supp. at 719; *see* P.L. 129–1991, SEC. 8, effective July 1, 1991. "The 1991 amendment to Ind.Code § 13–7–20–21 changed the UST laws to allow a private party to take voluntary cooperative action and then seek contribution from the person who owned or operated the UST at the time the release occurred." *Id.* "In sum, the amendment removes the intermediate step of a state-issued corrective action order," but "does not allow recovery of response costs or attorneys' fees *incurred prior* to the effective date of the amendment." *Id.* at 720 (emphasis added).

■ An attorney for IDEM testified that: "If the Commissioner of IDEM or any other authorized representative of IDEM had issued an Order requiring or compelling ... [Western] to clean up or remediate the prop-

erty, the Order would have been in written form.... The file maintained by IDEM regarding the Property contains no written Order...." R. 770. The IDEM representative overseeing the clean-up of Western's property testified that "there was an informal order from me verbally that there is going to be corrective action taken on this site." R. 781. Yet, when questioned by counsel for Clark, the representative agreed that he did not have "the authority to issue any formal, written order requiring corrective action on behalf of IDEM." R. 797. The IDEM representative explained that "[i]f we did not get cooperation to do the clean-up ... the first thing would probably be a letter requesting that they do it from the Office of Legal Counsel. If that did not bring action then it would escalate into a Notice of Violation to do the necessary clean-up." R. 779. We conclude that the evidence supports the findings and conclusions of the trial court that IDEM had issued no corrective action order and Western's remediation of the property was undertaken voluntarily.[5]

## III.

■ Western argues that the trial court erred in concluding that it could not recover remediation costs from Clark under the Illegal Dumping Statute.[6] It contends that the trial court improperly applied the statute to require that the complaining landowner must have owned the property at the time of the illegal dumping. Western also contends that the trial court erred in finding that there was no proof that Clark dumped any materials on the property during the time when Western owned the property.

The Illegal Dumping Statute provides, in part:

A landowner on whose land garbage or other solid waste has been illegally

---

**5.** Western also contends that the trial court erred in concluding that it was not entitled to recover from Clark costs for installing additional monitoring wells that IDEM neglected to require, and apparently were never installed, but which Western believes are required. Western points to no evidence that it incurred any additional expenses or will be required to expend any funds in the future pertaining to the soil remediation. Western incorrectly asserts that the trial court erred in determining that it could not recover costs for "remediation expenses potentially required."

Appellant's Brief at 25. The trial court found that "[a]ll costs of remediating the property were incurred by [Western] prior to July 1, 1991." R. 449. There is no evidence in the record that Western has expended any additional funds. We express no opinion regarding Clark's liability for any remediation costs which might have arisen after July 1, 1991, or might arise in the future.

**6.** This statute has been referred to as the "landowner recovery statute." *Walling v. Appel Serv. Co., Inc.,* 641 N.E.2d 647, 649 (Ind.Ct.App.1994).

dumped without the landowner's consent may, in addition to any other legal or equitable remedy available to the landowner, recover from the person responsible for the illegal dumping:

(1) reasonable expenses incurred by the landowner in disposing of the garbage or other solid waste; and

(2) reasonable attorney's fees.

Ind.Code § 13–30–3–13(d), *formerly* § 13–7–11–6. "Solid waste" includes "any garbage, refuse ... or other discarded material, including solid, liquid, semisolid, or contained gaseous material ...," Ind.Code § 13–11–2–205(a), but does not include certain hazardous wastes. Ind.Code § 13–11–2–205(b)(1).

However, we need not address Western's specific contentions. It is irrelevant whether Western owned the property at the time of the release of the solid waste. Likewise, it does not matter whether the release occurred during the period when Clark owned the parcel. Having already held that the parties' contract was sufficient to transfer liability for the costs of remediation to Western under the Indiana Underground Storage Tank Act, we conclude that it is likewise sufficient to transfer responsibility under the Indiana Illegal Dumping Statute. Indiana Code Section 13–30–3–13 imposes no additional liability over and above that dictated by Ind.Code § 13–23–13–8.[7] The contract for sale of the property explicitly transferred *all* responsibility for the underground tanks and lines to Western. Having held that this encompassed responsibility for leaks from the tanks, the transfer of responsibility is no less applicable to the Illegal Dumping Statute.

We hold that the parties' contract for sale of the property prohibits Western from recovering from Clark under Ind.Code § 13–30–3–13.

Affirmed.

STATON, J., and KIRSCH, J., concur.

---

7. Both statutes provide for attorney's fees. *See* Ind.Code §§ 13–23–13–8(b) and 13–30–3–13(d)(2).