James BOPP, Jr. and Barry A. Bostrom, Appellants–Plaintiffs,

v.

Arnold H. BRAMES, Eric M. Able, Rhonda D. Oldham, and The Partnership of Brames Abel & Oldham, Appellees–Defendants.

No. 84A01–9807–CV–278.

Court of Appeals of Indiana.

June 30, 1999.

Barry A. Bostrom, Bopp, Coleson & Bostrom, Terre Haute, Indiana, Attorney for Appellants.

Arnold H. Brames, Brames & Oldham, Gerald H. McGlone, McGlone Law Offices, Eric M. Abel, Terre Haute, Indiana, Attorneys for Appellees.

## OPINION

BAKER, Judge

This case is once again before us on appeal after remand to the trial court. Appellants-plaintiffs and counter defendants James Bopp, Jr., and Barry A. Bostrom [collectively, Bopp], appeal the trial court's award of $67,614.73 in favor of appellees-defendants and counter claimants, Arnold H. Brames, Eric M. Abel, Rhonda D. Oldham, and the

partnership of Brames & Oldham [collectively, Brames].

Specifically, Bopp contends that the decision is erroneous because: (1) the trial court did not pro rate the cost of Bopp's gross general overhead expenses in calculating the amount owed to the original law partnership regarding work that had been performed on two client matters and failed to consider the proper value of the services that were rendered in determining the "built-up" value of the law firm; and (2) Bostrom should not be held individually liable for the judgment. Brames also cross-appeals, claiming that he was entitled to prejudgment interest on the judgment amount that Bopp was ordered to pay.

### FACTS

On October 12, 1992, the partners in the Terre Haute law firm of Brames, Bopp, Abel & Oldham (the firm) voted unanimously to dissolve their partnership effective the next day. Bostrom and two other individuals were associates in the firm and were paid as salaried employees. On the date of dissolution, Brames, Abel and Oldham formed a new partnership. Bopp proceeded to form a sole proprietorship entitled "Bopp, Coleson & Bostrom," where Bostrom was employed as an associate attorney.

During Bopp's association with the firm, he had represented Nancy Glenn in a personal injury matter entitled *Glenn v. Belcher, et al.*, which was pending in a Florida court. Glenn had entered into a contingency fee arrangement with Bopp to individually represent her. No other member of the firm performed work on Glenn's case.

Also prior to the dissolution, Bostrom had represented Debra K. Barth in a wrongful death action against the Indiana State Police. Bostrom had agreed to represent her on a contingency fee basis. Barth had not retained any other attorney in the firm, and no work on her case was performed by Brames, Abel or Oldham. Only Bopp and Bostrom performed the legal services for Barth. During the pendency of the case, the firm had advanced certain expenses on Barth's behalf. The case was ultimately tried, which resulted in a jury verdict of $300,000. While on appeal, the case was eventually settled for $270,000, and Bostrom recovered attorney fees in the amount of $108,000, and was reimbursed for expenses. The expenses of the *Barth* case prior to the dissolution of the firm totaled $9,035.30.

In the aftermath of the dissolution, Bopp initially filed suit for liquidation and receiver against his former partners, Arnold H. Brames, Eric M. Abel, Rhonda D. Oldham, and Brames' new partnership. The amended complaint alleged that Brames and the others had improperly used partnership funds and refused to meet in order to liquidate the partnership. R. at 33–35. Brames then filed a complaint for damages against Bopp and Bostrom alleging, *inter alia*, that they had breached their fiduciary duty to the former partnership in failing to properly account for attorney fee income. Brames also asserted that Bopp and Bostrom improperly "wrote off" a substantial number of hours that should have been charged to Bopp's clients. R. at 16.

The cases were eventually consolidated for trial and the court ultimately liquidated the former partnership and divided the assets. As a result, judgment was entered against Bopp in the amount of $18,822.19. In the original appeal to this court, the parties asserted error in the trial court's treatment of earned or anticipated fees from several clients of the former partnership, including the *Barth* and *Glenn* matters.

In our memorandum decision, *Bopp v. Brames*, No. 84A01–9411–CV–354, 654 N.E.2d 924, September 12, 1995, we noted that prior to the dissolution, the firm had a "built-up value" in the *Barth* case. Slip op. at 11, 654 N.E.2d 924. Contrary to the trial court's conclusion that the firm was not entitled to any portion of the fee generated in *Barth*, we reversed and held that the firm could recover the quantum meruit value of the fee recovered by Bostrom. Slip op. at 10, 654 N.E.2d 924. As a result, we remanded the case to the trial court to determine the reasonable value of the services provided by Bostrom in the *Barth* case for work performed prior to the dissolution. Moreover, we directed the trial court to decide the

portion of the value that Bopp was obligated to pay Brames, Abel and Oldham. We also remanded for a determination as to which counsel in the firm originated the *Glenn* matter and what portion of the attorney fees collected in that case should be paid to Brames, Abel and Oldham by Bopp.

Following remand, the trial court heard the evidence on March 11, 1998, and entered its findings of fact, conclusions of law and judgment on May 12, 1998. R. at 191. It determined that Bopp was entitled to 21.84% and the remaining members of the firm, 78.16% of the reasonable quantum meruit value of the built-up value of the *Barth* fee for actual hours and time spent on that case. As of the dissolution, the trial court found that the firm had a quantum meruit value of the *Barth* fee in the amount of $58,708.50, of which 78.16% was an asset of Brames *et al.*, or $45,886.80. R. at 193. In its calculations, the trial court included partner, associate and paralegal time in determining that the firm had completed 54.36% of the total hours worked on the case to completion. R. at 192. Specifically, the court's calculations were set forth in the following findings:

9. Following the dissolution of the Firm, the Barth case was settled, and Bostrom recovered a total fee of $108,000.00, together with reimbursement of expenses, and the expenses of said case prior to the dissolution of the Firm totaled $9,035.30;

. . .

11. After the dissolution of the Firm, Bopp and Bostrom performed legal services in the Barth case and advanced expenses for the same;

12. At the time of the dissolution of the Firm, there had been a total of 423.95 hours of partner, associate and paralegal time on the Barth case out of a total of 779.95 hours of lawyer time spent on the case, including the time of the Firm; hence, the Firm had completed 54.36% of the total hours worked on the Barth case at the time of the settlement and completion of that case;

13. At the time of the dissolution of the Firm, the Firm's total capital was $50,-044.52, with each of the partners owning in their individual capital accounts the following sums and percentages:

| | | |
|---|---|---|
| Arnold H. Brames | $12,675.11 | 25.33% |
| James Bopp, Jr. | 10,929.36 | 21.84% |
| Eric M. Abel | 7,823.98 | 15.63% |
| Rhonda D. Oldham | 18,616.07 | 37.20% |

14. Bopp is entitled to 21.84% and the remaining members of the Firm, 78.16% of the reasonable quantum meruit value of the built up value of the Barth fee for actual hours and time spent on said case;

15. As of the dissolution of the Firm, the Firm had a reasonable quantum meruit value of the Barth fee of $58,708.50 (54.36% of hours × fee of $108,000), of which 78.16% was an asset of Brames et al., or $45,886.80;

16. Brames et al. are entitled to 78.16% of the expenses of the Firm in the Barth case prior to dissolution, or $7,061.99. . . .

R. at 193.

The trial court also found that Abel had been the originating attorney of the *Glenn* matter. R. at 193. Although Bopp's billing number was assigned to Glenn's file, the trial court noted that for billing purposes the firm's practice was to assign the case to the attorney who first spoke with the client. While it was demonstrated that Bopp performed most of the legal work on the *Glenn* case prior to dissolution and Abel performed little, if any of the services, the firm's partnership agreement contemplated that it was the originating attorney who retained a pecuniary interest in any fee received in the case. As a result, the trial court found that as of the date of dissolution, there had been accumulated the sum of $11,763.25 of partner, associate and paralegal time, and a total of $638.78 in expenses advanced by the firm in the *Glenn* matter. After the *Glenn* case was settled, Bopp received a net attorney fee in the amount of $20,000.[1] Bopp also received additional attorney fees in the amount of $8,333.33, which represented the recovery of medical expenses. Therefore, in addition to the $45,886.80 that Brames was entitled to recover in the *Barth* case, the trial court

---

1. $6,666.67 in additional fees were paid to Florida counsel.

found that Brames was entitled to recover 50% of the attorney fees Bopp received in the *Glenn* case which totaled $14,166.67. The trial court also determined that Brames was entitled to 78.16% of the costs of $638.78 advanced in *Glenn* as of the date of dissolution which totaled $499.27. R. at 195.

In sum, the trial court found that Bopp was liable to Brames in the amount of $67,-614.73 regarding the *Glenn* and *Barth* matters. Bopp now appeals that final judgment and Brames cross-appeals from the trial court's denial of its request for prejudgment interest regarding fees and reimbursement of expenses in the *Barth* and *Glenn* matters.

## DISCUSSION AND DECISION

### I. Standard of Review

We initially note our standard of review. Because the trial court has entered findings of fact and conclusions of law, we engage in a two-tiered standard of review. *Western Ohio Pizza, Inc. v. Clark Oil & Refining Corp.,* 704 N.E.2d 1086, 1090 (Ind. Ct.App.1999). We must first determine whether the evidence supports the findings of fact and then whether the findings support the judgment. *Id.* The court's findings and judgment will not be reversed unless clearly erroneous, that is, that the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* In making these determinations, we will neither reweigh the evidence nor judge witness credibility, but we will consider only the evidence favorable to the judgment and all reasonable inferences therefrom. *Heiligenstein v. Matney,* 691 N.E.2d 1297, 1300 (Ind.Ct. App.1998).

### II. The Barth and Glenn Matters

Bopp first attacks the judgment award that the trial court made with regard to the *Barth* and *Glenn* matters. Specifically, Bopp maintains that the trial court erred when it failed to attribute a pro rata portion of his gross general overhead expenses when calculating the amount he was obligated to pay and did not properly determine the value of the services that were rendered.

To resolve this issue, we initially observe that Bopp relies primarily upon this court's decision in *Hammes v. Frank,* 579 N.E.2d 1348 (Ind.Ct.App.1991), in support of his position that the trial court should have credited him with additional overhead expenses when calculating the judgment. In that case, we observed that upon the dissolution of a partnership and prior to the distribution of any profits, each partner is entitled to be reimbursed for reasonable and necessary overhead expenses attributable to winding up the business. *Id.* at 1353. However, we note that in calculating the distribution of profits in that law partnership, the profits of the firm primarily consisted of the proceeds of a former law partner's handling of a major class action lawsuit where he spent the vast majority of his time and incurred substantial expense in doing so. *Id.* at 1353.

Unlike the situation in *Hammes,* where counsel's office facilities were devoted primarily to a particular case, the record here reflects that the *Barth* and *Glenn* matters occupied less than 4% of Bopp's and less than 10% of Bostrom's available work time from October 1992, to December 1994. R. at 499–500.

While the definition of overhead for the purposes of winding up a partnership is unsettled in this jurisdiction and elsewhere, *see id.* at 1353, the trial court here opted for a method of determining the firm's built-up value in the *Barth* case simply by calculating the hours worked before the dissolution compared to total attorney hours that were devoted to the matter. Such a method amounts to a sharing of reimbursement of expenses, income and profits in an understandable fashion.

We therefore decline Bopp's invitation to adopt a theory of attributing gross overhead to a fee-splitting case. To do so in circumstances such as those before us could result in the maximization of capital or investment expenses which would effectively defy any rational analysis of financial data relevant and specific to a particular case. Moreover, the trial court would be confronted with the nearly insurmountable task of sifting through

detailed evidence regarding valuations of expense and profit itemizations which are unrelated to a matter which is the focus of the litigation. Thus, Bopp's proposal to tie Brames to the profitability or unprofitability of a former partner by including gross overhead expenses would cause speculation and result in confusion. Therefore, we reject Bopp's attempt to urge this court to revalue his services in the *Barth* and *Glenn* matters and conclude that the trial court properly calculated the amount of Bopp's liability.

## II. Liability of Bostrom

■ Bostrom claims that the trial court's judgment entered against him personally with respect to fees generated from the *Barth* case is clearly erroneous. Specifically, Bostrom contends that the judgment was improper because he may not be held jointly and severally liable as an associate of the firm for partnership debts.

■ We initially note that an agency relationship is confidential and fiduciary, which obligates the agent to exercise the utmost good faith. *Union Miniere, S.A. v. Parday Corp.*, 521 N.E.2d 700, 703 (Ind.Ct. App.1988). Unless otherwise agreed, an agent owes a duty to his principal to act solely for the principal's benefit. *Egan v. Burkhart*, 657 N.E.2d 401, 404 (Ind.Ct.App. 1995). An agent cannot escape liability on the ground that he acted for a principal. *Howard Dodge & Sons, Inc. v. Finn*, 181 Ind.App. 209, 212–13, 391 N.E.2d 638, 641 (1979).

In accordance with the Uniform Partnership Act, IND. CODE § 23–4–1–30, "upon dissolution, the partnership is not terminated, but continues until the winding up of partnership affairs is completed." Additionally, a companion statute, I.C. § 23–4–1–21, provides that:

> Every partner must account to the partnership for any benefit, and hold as trustee for it, any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use of its property.

■ In the instant case, we note that Bostrom was the originating attorney in the *Barth* matter. While Bostrom was not a partner in the firm, Bopp has consistently maintained throughout the pendency of this litigation that Barth was a client of the individual attorney and not of the firm. As an agent of the firm, Bostrom owed a fiduciary duty to the partnership. *See Egan*, 657 N.E.2d at 404. Inasmuch as Bopp was responsible as a fiduciary to the others as a partner in the firm, Bostrom must also be accountable to the firm as its employee. Under these circumstances, Bostrom may not escape liability upon the theory that he was acting only at Bopp's direction as an employee and could not be held personally liable for the judgment. *See* I.C. § 23–4–1–21; *see also Howard Dodge*, 181 Ind.App. at 213, 391 N.E.2d at 641–42 (agent who converted third person's property for benefit of his principal was personally liable). Thus, the trial court did not err in finding Bostrom personally liable on the judgment.[2]

## III. Cross–Appeal; Denial of Prejudgment Interest

■ On cross-appeal, Brames claims that the trial court erred in denying his request for prejudgment interest on the judgment. Specifically, Brames asserts that he is entitled to prejudgment interest in the amount of $20,751.36 on the judgment award of $67,314.73 regarding the attorney fees and reimbursed expenses in the *Barth* and *Glenn* matters. Thus, Brames requests that we amend the judgment to the sum of $88,366.09, plus 8% interest after May 12, 1998, the date upon which the trial court entered its amended findings of fact and conclusions of law.

In support of Brames' claim that he is entitled to this additional amount, he contends that Bopp has had the use of the attorney fees from the date of their receipt. Brames asserts that Bopp received the money on July 22, 1993 and October 18, 1994, and

---

**2.** Notwithstanding Bostrom's liability, we note that if Bostrom has a claim for indemnity against Bopp, he will have suffered no harm.

has had the use of those funds since those dates.

When reviewing a decision regarding an award of prejudgment interest, our standard of review is for an abuse of discretion, focusing on the trial court's threshold determination as to whether the facts satisfy the test for making such an award. *Harlan Sprague Dawley, Inc. v. S.E. Lab Group, Inc.*, 644 N.E.2d 615, 617 (Ind.Ct.App.1994), *trans. denied.* The decision to award prejudgment interest rests on a factual determination and this court may only consider the evidence most favorable to the judgment. *Id.*

We note that the crucial factor in determining whether damages in the form of prejudgment interest are allowable is whether the damages were ascertainable in accordance with fixed rules of evidence and accepted standards of valuation. *Id.* at 618. An award of prejudgment interest is proper only where a simple mathematical computation is required. *Brane v. Roth*, 590 N.E.2d 587, 593 (Ind.Ct.App.1992), *trans. denied.* Damages that are the subject of a good faith dispute cannot allow for an award of prejudgment interest. *Id.*

In *Hammes*, we upheld the trial court's denial of prejudgment interest to former law partners following the dissolution of the partnership. Specifically, this court observed as follows:

> The crucial factor in determining whether damages in the form of prejudgment interest are allowable is whether the damages were ascertainable in accordance with fixed rules of evidence and accepted standards of valuation.... When the trier of fact determines liability for damages exists, prejudgment interest is proper only where a simple mathematical computation is required....
>
> The trial court found that since January 13, 1984, the day of dissolution, numerous fees were collected on many different dates, with each fee received subject to overhead offset and other expenses before distribution to the partners. The finding that damages are not readily ascertainable by mere computation in this case is supported by the evidence; the trial court's decision denying prejudgment interest was appropriate.

*Hammes,* 579 N.E.2d at 1357.

In the instant case, there was a significant dispute as to the amount of the claim, as indicated by the contingency-fee nature of the matters which had not been completed at the time of the partnership dissolution. Inasmuch as the outcomes were uncertain, the amount of the award was neither complete nor ascertainable because it was uncertain as to whether any fee might have been collected in either the *Barth* or *Glenn* matters. Moreover, the value of each case could only begin to be determined when the cases were concluded, and a particular sum paid.

We also recognized in *Hammes* that the calculation of overhead for the purposes of winding up a partnership is unsettled in this jurisdiction and elsewhere. *Id.* at 1353. Moreover, we note that this court provided no guidelines in our prior memorandum decision for calculating the built-up value of the legal services performed in *Glenn* or *Barth* because there are no "hard and fast" rules establishing accepted standards of valuation in such cases. As a result, we cannot say that the trial court's denial of prejudgment interest constituted an abuse of discretion.

## CONCLUSION

In light of our resolution of the issues set forth above, we conclude that the trial court's method of calculating Bopp's liability to Brames with respect to the *Barth* and *Glenn* matters was not clearly erroneous. Moreover, the trial court's calculation methods regarding Bopp's liability to the firm are representative of an understandable method of computation involving reimbursed expenses, income and profits. Additionally, we note that the trial court's award against Bostrom was proper, and the denial of Brames' request for prejudgment interest did not constitute an abuse of discretion.

Judgment affirmed.

RUCKER, J., and BROOK, J., concur.