**GENERAL MOTORS CORPORATION and Stanley Chevrolet/Oldsmobile, Appellants–Defendants,**

v.

**Kirby J. SHEETS and Becky L. Sheets, Appellees–Plaintiffs.**

No. 48A02–0402–CV–00099.

Court of Appeals of Indiana.

Nov. 22, 2004.

50

Indiana Motor Vehicle Protection Act (the Lemon Law); and (4) awarding excessive attorney's fees to the Sheetses' counsel. Finding that the judgment should have included the usage deduction, but should not have included refunds of monies the Sheetses did not pay, pre-judgment interest, or attorney fees incurred after September 26, 2002, the date of GM's second qualified settlement offer, we reverse and remand to the trial court with orders to recalculate the award of damages.

Connie J. Postelli, Crown Point, IN, Attorney for Appellants.

Ralph E. Sipes, Busby, Austin, Cooper & Farr, Anderson, IN, Attorney for Appellees.

**OPINION**

BAKER, Judge.

The plaintiffs in this case tried to make lemonade out of our Lemon Law. However, the judgment they received was a little too sweet.

Appellants-defendants General Motors Corp. and Stanley Chevrolet/Oldsmobile (collectively GM) appeal the trial court's judgment in favor of Kirby and Becky Sheets (the Sheetses) with regard to their cause of action against GM for breach of warranty. Specifically, GM argues that the trial court erred by: (1) not making the required usage deduction under Indiana Code section 24-5-13; (2) awarding refunds of monies that the Sheetses did not pay; (3) awarding pre-judgment interest that was not properly pled or supported and is not provided for in the

*FACTS*[1]

■ On February 28, 2001, the Sheetses purchased a new Oldsmobile Aurora from Stanley Chevrolet/Oldsmobile in McCordsville. The vehicle was purchased under the provisions of the GM New Vehicle Purchase Agreement and Purchase Certificate signed by Kirby, which entitled Kirby to participate in the buyer discount plan.

General Motors manufactured the vehicle and provided a 3–year/36,000 mile warranty on the vehicle. At the time of the sale, the warranty was extended at no cost to the Sheetses, to cover the vehicle for 5 years/60,000 miles. The value of the Extended Warranty was $900. A contract for one year of Safety & Security coverage through OnStar[2] was provided to the Sheetses at no cost for one year. The Manufacturer's Suggested Retail Price (MSRP) of the vehicle was $34,159. The total price the Sheetses paid for the vehicle was $31,492.53, which included the tire fee and sales tax. They had a total credit of $23,000 that included $19,500 for the value of a trade-in vehicle and $3500 for

1. We remind counsel for the appellees that Indiana Appellate Rule 46(A)(6)(c) requires that "[t]he statement shall be in narrative form...." A reproduction of the trial court's findings of fact is not a proper statement of facts.

2. OnStar is a service provided in certain GM vehicles that gives its subscribers information such as driving directions, concierge services, stolen vehicle tracking, and roadside assistance. http://www.onstar.com (last visited September 15, 2004).

rebates and incentives. Those rebates and incentives are discounts in the sticker price of the vehicle. In addition, the Sheetses paid $8492.53 in cash, and they did not finance the vehicle.

On October 18, 2001, the vehicle was brought into Hare Chevrolet, an authorized dealership, with an electrical problem for the first time. The odometer showed that the vehicle had been driven 13,446 miles on that date. After the vehicle was repaired, it continued to exhibit the electrical problem and was submitted for repairs on October 25, 2001, November 11, 2001, and December 6, 2001. The vehicle was out of service in excess of seventy-five days for those repairs.

On January 22, 2002, Kirby told the dealership that he did not want the vehicle back, and he revoked his acceptance of the vehicle. GM made an offer for a trade repurchase wherein Kirby would return the 2001 Aurora to GM and be given a 2002 Aurora of his choosing. The difference in the MSRP of the two vehicles was $2841. In addition, GM charged the Sheetses for the usage of the 2001 Aurora, totaling $4,020. This calculation uses the statutory usage [3] formula of current mileage divided by 100,000, multiplied by the purchase price. Kirby refused that offer because he felt that he should not pay any usage fees on the vehicle.

On February 28, 2002, the Sheetses, through their attorney, notified GM that they were revoking acceptance of the vehicle. In the letter, the Sheetses made a demand for $38,049.40, which made no allowance for statutory usage and included a request for vehicle rental from January 22, 2002 through April 1, 2002, at the rate of $25 per day. Kirby did not actually rent a vehicle. Instead, he drove a vehicle from his own business until May 31, 2002, when he purchased a 2003 Cadillac CTS.

On June 25, 2002, the Sheetses filed a complaint against GM, alleging breach of express warranty, breach of implied warranty, violation of the Indiana Motor Vehicle Protection Act,[4] and revocation of acceptance. The next day, the Sheetses filed an amended complaint with the same allegations, but they included a request for pre-judgment interest of 8% per annum in the request for relief. On July 22, 2002, GM served an offer of judgment and a qualified settlement offer for $33,829.40, including attorney fees, on the trial court and the Sheetses. GM never received a response to those offers. On September 26, 2002, GM served a second offer of judgment and qualified settlement offer for $31,829.40, with attorney fees to be determined by the trial court, on the trial court and the Sheetses. GM received no response to those offers.

A bench trial was held on October 21, 2003. During the trial, GM objected to the inclusion of pre-judgment interest. Counsel for the Sheetses made no response to that objection, and the trial court sustained the objection. On November 12, 2003, the trial court entered the judgment submitted by the Sheetses—which included pre-judgment interest, a refund of the rebates and incentives GM gave the Sheetses when they purchased the vehicle, and attorney fees, but did not include a usage deduction—as the final order in this matter. On December 11, 2003, GM filed a motion to correct errors, alleging that the order of the trial court was contrary to the evidence and the law. The trial court

---

3. The allowance for use is a setoff to provide for the use the purchasers had of the automobile during the time it was in their possession. Ind.Code § 24–5–13–11.

4. Ind.Code § 24–5–13.

summarily denied GM's motion on December 31, 2003, and GM now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

When a trial court enters specific findings of fact and conclusions of law pursuant to Trial Rule 52(A), we will not set aside a trial court's findings or judgment unless clearly erroneous. *Wedgewood Community Ass'n, Inc. v. Nash*, 781 N.E.2d 1172, 1177 (Ind.Ct.App.2003). Our standard of review is two-tiered:

> First, we consider whether the evidence supports the findings, construing the findings liberally in support of the judgment. Findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. Next, we determine whether the findings support the judgment. A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it. In applying this standard, we neither reweigh the evidence nor judge the credibility of the witnesses. Rather, we consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom.

*Crawley v. Oak Bend Estates Homeowners Assoc.*, 753 N.E.2d 740, 744 (Ind.Ct.App. 2001), *trans. denied.*

### II. Usage Deduction

■ GM first argues that the trial court erred in failing to apply the usage deduction to its judgment. Specifically, GM argues that the Sheetses received the benefit of the use of the vehicle before the first time it was brought in for repairs, and therefore the statutory deduction must be applied.

The Lemon Law applies to all motor vehicles that are sold, leased, transferred, or replaced by a dealer or manufacturer in Indiana. Ind.Code § 24–5–13–1. The term of protection under the Act begins on the date of original delivery to the buyer and continues until the earlier of eighteen months or 18,000 miles. I.C. § 24–5–13–7. The manufacturer is allowed a reasonable number of attempts to correct a nonconformity—defined as any specific or generic defect of condition or concurrent combination of defects or conditions that substantially impairs the use, market value or safety of a motor vehicle. I.C. § 24–5–13–6. A reasonable number of attempts is considered to have been undertaken if the nonconformity has been subject to repair at least four times but continues to exist or if the vehicle has been out of service for at least thirty business days and the nonconformity continues to exist. I.C. § 24–5–13–15.

If a refund is given for a vehicle with a nonconformity, the refund must be the full contract price of the vehicle, including all credits and allowances for any trade-in vehicle and less a reasonable allowance for use. I.C. § 24–5–13–11. Indiana Code section 24–5–13–11 explains the calculation required to determine the usage deduction if a refund is tendered for a nonconforming vehicle:

> (b) To determine a reasonable allowance for use under this section, multiply:
> (1) the total contract price of the vehicle; by
> (2) a fraction having as its denominator one hundred thousand (100,000) and having as its numerator the number of miles that the vehicle traveled before the manufacturer's acceptance of its return.

When a refund is made, it must include all sales tax, the unexpended portion of the registration fee and excise tax that has been prepaid for any calendar year, all finance charges actually expended, and the

cost of all options added by the authorized dealer. I.C. § 24–5–13–11(c).

Here, GM stipulated to the nonconformities of the vehicle in question because it had been in for repairs in excess of seventy-five days. Appellant's App. p. 147. The Sheetses did not deny that they put 13,446 miles on the vehicle before they experienced the first electrical problem, and, therefore, they received the benefit of the use of the vehicle for those miles. Therefore, applying the formula set forth above, the usage deduction in this case is $4,226.01.[5] Inasmuch as Indiana Code section 24–5–13–11 requires that a usage deduction be subtracted from a refund, the trial court erred by not deducting this amount from its judgment.

### III. Refund of Monies the Sheetses Did Not Pay

GM next contends that the trial court erred in refunding money to the Sheetses that they did not pay for the vehicle. Specifically, they assert that inasmuch as the rebates and incentives were deductions in the purchase price, it places the Sheetses in a better position than if GM had fully performed.

■ One of the broad remedial goals of the Uniform Commercial Code is that the aggrieved party be put in as good a position as if the other party had fully performed, but not in a better position. *Brandeis Machinery & Supply Co., LLC v. Capitol Crane Rental, Inc.*, 765 N.E.2d 173, 177 (Ind.Ct.App.2002). Moreover, Indiana Code section 24–5–13–13 provides, "Whenever a vehicle is replaced or refunded under this chapter, the manufacturer shall reimburse the buyer for necessary towing and rental costs *actually incurred* as a direct result of the nonconformity." (Emphasis added).

■ In its order, the trial court awarded the Sheetses $339 for the OnStar subscription, $4,400 for the GM rebates and incentives, including the value of the extended warranty, and $3,075 for the rental of the Dodge truck. Appellant's App. p. 91. The Sheetses argue that the extended warranties, rebates and other incentives are nothing more than "options" added by the dealer that must be included in the refund amount that can be awarded under Indiana Code section 24–5–13–11. However, such is a blatant misinterpretation of the term. An option is an "item available in addition to the standard features of a product, esp. of a motor vehicle." Oxford English Dictionary 2011 (1993). Options are generally understood to be items that are added to the vehicle—such as a sunroof or a DVD player—not to the deal. Because the OnStar subscription and the rebates and incentives were given to the Sheetses as a reduction in the purchase price, to award them these damages is to provide them with a double recovery. Thus, we can only conclude that the trial court erred in refunding those amounts.

■ Finally, GM points out that the Sheetses did not actually rent a vehicle while the Aurora was in service. Instead, Kirby drove a truck from his own business. The Sheetses were not charged for the use of the truck. Therefore, no rental costs were actually incurred, and it was error for the trial court to award the Sheetses rental costs when there was no evidence that there were any such costs.

### IV. Pre-judgment Interest

■ GM avers that the trial court erred in awarding pre-judgment interest. Specifically, GM contends that the Sheetses waived an award of interest by failing to

---

5. $(13,446/100,000) \times \$31,492.53 = 4,226.01$.

respond to GM's objection to the inclusion of pre-judgment interest.

▮▮▮ The award of pre-judgment interest is evaluated under an abuse of discretion standard. *Bopp v. Brames,* 713 N.E.2d 866, 872 (Ind.Ct.App.1999), *trans. denied.* The decision to award prejudgment interest rests on a factual determination, and this court may only consider the evidence most favorable to the judgment. *Id.* We note that the crucial factor in determining whether damages in the form of prejudgment interest are allowable is whether the damages were ascertainable in accordance with fixed rules of evidence and accepted standards of valuation. *Id.* An award of prejudgment interest is proper only where a simple mathematical computation is required. *Id.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Brademas v. South Bend Community Sch. Corp.,* 783 N.E.2d 745, 750 (Ind.Ct.App.2003), *trans. denied.*

The Lemon Law does not specifically allow for the recovery of pre-judgment interest. The complaint contains a generic request for pre-judgment interest of 8% per annum. Appellant's App. p. 39. The complaint does not contain any allegations in support of the request for pre-judgment interest or a sum certain upon which the interest could be based. When the attorney for the Sheetses asked Kirby in the hearing whether he was asking the trial court to award pre-judgment interest, GM's counsel objected to the inclusion of testimony regarding pre-judgment interest. The Sheetses made no response, and the trial court sustained the objection. Tr. p. 26–27. Because the objection was sustained, the trial court had no evidence before it upon which it could base an award of pre-judgment interest, and it was

error to include these damages in the final order.

## V. Attorney Fees

▮▮▮ GM finally argues that the trial court erred in awarding excessive attorney fees to counsel for the Sheetses. Specifically, GM avers that the trial court should not have included any attorney fees incurred after the Sheetses failed to respond to GM's offers of settlement because they were not reasonably incurred.

Indiana Code section 24–5–13–22 provides:

A buyer who prevails in any action brought under this chapter is entitled to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses, including attorney's fees based on actual time expended by the attorney, determined by the court to have been *reasonably incurred* by the buyer for or in connection with the commencement and prosecution of the action.

(Emphasis added).

GM made two qualified settlement offers—which would have resolved all the issues between the parties with the attorney fees to be decided by the trial court, as required by Indiana Code section 24–5–13–22—and the Sheetses failed to respond to either of them. The second offer would have given the Sheetses all that the law would allow them, including a reduction in the amount of usage, all monies to which they were entitled under the Lemon Law, as well as the amounts requested that were not covered by the statute. Moreover, as discussed above, the Sheetses continued to pursue this litigation in an attempt to avoid the statutorily required usage deduction and to gain money that they did not spend on the vehicle in the first place. In our view, it was unreasonable for the Sheetses to ignore good faith of-

fers of settlement in favor of pursuing this litigation. Therefore, we find that the Sheetses are entitled only to attorney fees incurred before September 26, 2002, when the second offer of settlement was made, and such fees which would have been incurred to articulate the Sheetses' acceptance of the qualified offer.

## CONCLUSION

In light of the above disposition, we find that Indiana Code section 24–5–13–11 requires that a usage deduction be subtracted from a refund and that the Sheetses were not entitled to a refund of monies that they did not pay for the vehicle. We also find that the Sheetses are not entitled to pre-judgment interest and that they are only entitled to attorney fees incurred before September 26, 2002.

The judgment of the trial court is reversed and remanded for proceedings not inconsistent with this opinion.

KIRSCH, C.J., concurs in result.

ROBB, J., concurs with opinion.

ROBB, Judge, concurs with separate opinion.

I concur with the majority in this case, but in result only with respect to its holding regarding the trial court's error in awarding the Sheetses pre-judgment interest. I agree with the majority that because the Sheetses failed to respond to GM's sustained objection to the inclusion of testimony regarding pre-judgment interest, the Sheetses implied that they believed they were not entitled to pre-judgment interest. Therefore, they cannot now take issue with GM's contention that the trial court erred in awarding them pre-judgment interest. But I write separately to note that, had the Sheetses responded to GM's objection, they would have been entitled to pre-judgment interest because

the damages were clearly ascertainable in accordance with fixed rules of evidence and accepted standards of valuation. For this reason, I concur in result only with respect to the majority's conclusion that the trial court erred in awarding the Sheetses pre-judgment interest.