

FILED

Mar 23 2020, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Clifford R. Whitehead
L. Katherine Boren
Ziemer, Stayman, Weitzel & Shoulders, LLP
Evansville, Indiana

ATTORNEY FOR APPELLEES

Douglas K. Briody
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Sollers Point Company,
Sollers Point Limited
Partnership, and
Shapiro Family, LLC,

*Appellants-Defendants,*

v.

L.M. Zeller and
Zeller Elevator Company,

*Appellees-Plaintiffs.*

March 23, 2020

Court of Appeals Case No.
19A-CC-1156

Appeal from the Vanderburgh
Superior Court

The Honorable Richard G.
D'Amour, Judge

Trial Court Cause No.
82D07-1507-CC-3419

**Mathias, Judge.**

[1]     L.M. Zeller and Zeller Elevator Company (collectively "Zeller") filed a complaint in Vanderburgh Superior Court against Sollers Point Company, Sollers Point Limited Partnership, and Shapiro Family LLC (collectively

"Sollers Point"),[1] seeking to recover approximately $45,000 for elevator repair services Zeller had performed at a commercial building owned by Sollers Point in Evansville, Indiana. Following a bench trial, the trial court entered judgment in favor of Zeller in the amount of $26,729, plus pre-judgment interest, but found that the remaining money sought by Zeller was barred by the statute of limitations. Sollers Point filed a notice of appeal from this judgment, and Zeller filed a motion to correct error in the trial court claiming that the trial court had improperly excluded certain charges from its award of damages. After the trial court clerk filed its Notice of Completion of Clerk's Record in this court, the trial court issued an order purporting to grant Zeller's motion to correct error. In this appeal, Sollers Point presents three issues for our review, which we restate as:

  I.    Whether the trial court lacked jurisdiction to rule on Zeller's motion to correct error;

  II.   Whether Zeller's claims are barred by the applicable statute of limitations; and

  III.  Whether the trial court erred by awarding pre-judgment interest.

We affirm in part, reverse in part, and remand.

---

[1] Shapiro Family, LLC is the sole general partner of Sollers Point Limited Partnership.

# Facts and Procedural History

[3] This case involves a dispute over billing for elevator services Zeller performed at a commercial building ("the Building") owned by Sollers Point on Main Street in Evansville, Indiana. The Building was constructed in the late 1960s, and Zeller began to work on the elevators in the Building in 1969 as a subcontractor. In 1972, the company that then owned the Building, Transamerica Investment Group, hired Zeller directly to work on the elevators in the Building. And, in early 1973, Transamerica entered into a maintenance agreement with Zeller, under which Zeller agreed to provide regular maintenance and inspection of the elevators for $875 per month.

[4] In 1974, Sollers Point purchased the building from Transamerica but did not assume the maintenance agreement with Zeller from Transamerica. Zeller nevertheless continued to perform regular maintenance on the elevators for the same rate as provided in its agreement with Transamerica. Through the years, Zeller notified Sollers Point in writing that it planned to raise its rates for its work and invoiced Sollers Point for its regular maintenance. Zeller also provided separate invoices for work that did not fall within the ambit of regular maintenance. Sollers Point also regularly asked Zeller to perform other maintenance and repairs to the Building, including servicing and replacing air conditioners, smoke detectors, cooling fans, and a boiler. For decades, Sollers Point paid Zeller's invoices without conflict.

[5] The basis for the present conflict started on January 24, 2009, when a water main near the Building broke, causing flooding in the basement and part of the

elevator shafts. Sollers Point asked Zeller to inspect and repair any damage done to the elevator equipment. For several weeks, Zeller employees spent hours cleaning up and repairing damage caused by the flood. These efforts included removing water from the basement and elevator pits; cleaning and repairing elevator cars that had been submerged and damaged by water; disassembling, draining, cleaning, and lubricating various components of the elevator system; cleaning and lubricating the various wire ropes and cables used in the elevator system; pressure washing the walls of the elevator pits, the ladders, sills, doors, and bottoms of the elevator cars, all of which had been exposed to hydraulic fluid; cleaning all electrical switches; replacing all bearings; and various other tasks. Zeller also decided that the compensating cables for the elevators might rust as a result of the water damage and purchased new cables to replace the older ones.

[6]     On February 13, 2009, Zeller submitted an estimate for the costs of the clean-up and repairs resulting from the flood. The total of the estimate was $58,691.49. The estimate also stated that the cost of the work performed to date was $44,996.44, and provided that the cost to install the new cables would be $16,360.[2] Sollers Point submitted this estimate to its insurance carrier, who paid Sollers point $58,691.49, the exact amount of the estimate. Zeller later

---

[2] We note that, for whatever reason, the cost of the work performed to date ($44,996.44) plus the cost to install the cables ($16,360) equals $61,356.44, not the $58,631.49 total of the estimate.

determined that the cables did not need to be replaced and never installed the new cables.

[7] After the flood, Zeller continued to send Sollers Point regular invoices for routine maintenance, which Sollers Point continued to pay. The costs associated with the flood were not included in these regular invoices, which Zeller billed under a separate account ("the Flood Event Account"). Although Zeller provided an estimate shortly after the flood event, Zeller did not submit an invoice relating the costs of the flood clean-up and repair until December 21, 2011. This December 21 invoice ("the 2011 Invoice") demanded payment of $44,996.44, the same as the amount listed in the 2009 estimate for the work performed to date. Zeller later explained that, because replacement of the cables was later deemed unnecessary, it decided not to bill Sollers Point for any of the flood-related work that occurred after the 2009 estimate.[3] Sollers Point never paid this invoice.[4]

[8] On July 10, 2015, over three and a half years after submitting the 2011 Invoice, Zeller filed a complaint against Sollers Point, seeking to recover the unpaid $44,996.44 it had invoiced. Sollers Point filed an answer to the complaint on September 3, 2015. Sollers Point filed a motion for summary judgment on

---

[3] The 2011 Invoice also includes charges for items and services that occurred before the flood, such as refurbishing elevator doors in 2005 and the purchase of a DC drive in 2004—a drive that was ultimately never installed. The 2011 Invoice also included charges for cleanup and freight, which had been excluded from the 2009 estimate. The trial court later determined that these charges were time-barred by the statute of limitations.

[4] As found by the trial court, Charles Baum ("Baum"), the president of Shapiro Family, LLC, made the choice not to pay the 2011 Invoice. By the time of trial in this matter, Baum was deceased.

September 7, 2018, which the trial court denied on November 20, 2018. The case then proceeded to a two-day bench trial, which was held on December 21, 2018, and January 29, 2019. Sollers Point requested that the trial court enter specific findings and conclusions pursuant to Indiana Trial Rule 52, and both parties submitted proposed findings and conclusions to the court. On April 26, 2019, the trial court entered its specific findings and conclusions, entering judgment in favor of Zeller in the amount of $26,729.00, with pre-judgment interest. The court determined that $18,267.44 of the amount Zeller sought was time-barred by the applicable statute of limitations.

[9] On May 23, 2019, twenty-seven days after the entry of the trial court's final judgment, Sollers Point filed a Notice of Appeal. On May 28, 2019, thirty-two days after the trial court's judgment,[5] Zeller filed a motion to correct error, arguing that the court had improperly excluded certain charges from its award of damages. Sollers Point filed a response to Zeller's motion on June 1, 2019, noting that the trial court would soon lose jurisdiction due to Sollers Point's pending appeal. On June 17, 2019, before the trial court ruled on Zeller's motion to correct error, the trial court clerk filed its Notice of Completion of Clerk's Record, at which time our court acquired jurisdiction pursuant to Indiana Appellate Rule 8. Despite our acquisition of jurisdiction over this case,

---

[5] Thirty days after the trial court's judgment was May 26, 2019, a Sunday. Any motion to correct error was therefore due on May 27, 2019. Accordingly, Zeller's motion to correct error does not appear to have been timely filed.

the trial court entered an order purporting to grant Zeller's motion to correct error on June 21, 2019.

## Standard of Review

[10] Our standard of review in cases where the trial court enters findings of fact and conclusions of law was set forth by this court in *RCM Phoenix Partners, LLC v. 2007 E. Meadows, LP*:

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

118 N.E.3d 756, 759–60 (Ind. Ct. App. 2019), *trans. denied*. "Moreover, '[w]e may affirm a judgment on any legal theory, whether or not relied upon by the trial court, so long as the trial court's findings are not clearly erroneous and support the theory adopted.'" *Id.* at 760. (citing *Estate of Kappel v. Kappel*, 979 N.E.2d 642, 652 (Ind. Ct. App. 2012)); *see also Mitchell v. Mitchell*, 695 N.E.2d 920, 923–24 (Ind. 1998).

### I. The Trial Court Lacked Jurisdiction to Rule on Zeller's Motion to Correct Error

[11] Sollers Point first contends that the trial court lacked jurisdiction to rule on Zeller's motion to correct error. Specifically, Sollers Point contends that our court had already acquired jurisdiction over this case on June 17, 2019, when the trial court clerk issued its Notice of Completion of Clerk's Record, and the trial court therefore lacked jurisdiction to rule on Zeller's motion.

[12] As this court explained in *Crider v. Crider*,

> Under Indiana Appellate Rule 8, when a party initiates an appeal from a trial court order, this court acquires jurisdiction on the date the Notice of Completion of Clerk's Record is noted in the Chronological Case Summary. Orders issued by a trial court after this date generally are void. The policy underlying the rule is to facilitate the efficient presentation and disposition of the appeal and to prevent the simultaneous review of a judgment by both a trial and appellate court. There are exceptions to this rule, such as to allow a trial court to reassess costs, correct the record, enforce a judgment, continue with a trial during an interlocutory appeal concerning venue, or preside over matters which are independent of and do not interfere with the subject matter of the appeal.

15 N.E.3d 1042, 1064–65 (Ind. Ct. App. 2014) (citations and internal quotation marks omitted), *trans. denied*.

[13] In *Snemis v. Mills*, 24 N.E.3d 468, 470 n.2 (Ind. Ct. App. 2014), we noted that the trial court in that case lacked jurisdiction to rule on a motion to correct error because, by the time the trial court held a hearing on the motion, the trial court

clerk had already filed its notice of completion of the clerk's record. The same is true here. The trial court was divested of jurisdiction over this case upon the clerk's filing of the notice of completion of clerk's record. The trial court's ruling on Zeller's motion to correct error is therefore void. *See Crider,* 15 N.E.3d at 1064; *Cf. Reed v. State,* 796 N.E.2d 771, 773 n.1 (Ind. Ct. App. 2003) (noting that trial court had jurisdiction to rule on defendant's motions to correct error because the trial court clerk had not yet issued its notice of completion of clerk's record when trial court ruled on defendant's motions).

[14] We reject Zeller's contention that the trial court's decision to grant its motion to correct error was akin to correcting a mere scrivener's error. To the contrary, the trial court substantively changed its original order by increasing the judgment from $26,729 to $28,009. It did so based on its failure to make any findings regarding the $1,280 entry on the 2011 Invoice for "clean-up and removal of tools and equipment." *See* Appellant's App. Vol. 2, p. 47. The trial court was without jurisdiction to make such a substantive change to its order after the filing of the notice of completion of clerk's record. *See In re Marriage of Bartley,* 712 N.E.2d 537, 547 (Ind. Ct. App. 1999).

## II. *Statute of Limitations*

[15] Sollers Point next argues the trial court erred by rejecting its claim that Zeller's claims were barred by the applicable statute of limitations. "Statutes of limitation 'are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has

been lost.'" *V. Ganz Builders & Dev. Co., Inc. v. Pioneer Lumber, Inc.*, 59 N.E.3d 1025, 1032 (Ind. Ct. App. 2016) (quoting *Russo v. S. Developers, Inc.*, 868 N.E.2d 46, 48 (Ind. Ct. App. 2007)), *trans. denied*. Statutes of limitations are "'enacted upon the presumption that one having a well-founded claim will not delay in enforcing it.'" *Id.* (quoting *Morgan v. Benner*, 712 N.E.2d 500, 502 (Ind. Ct. App. 1999), *trans. denied*)). "The nature or substance of the cause of action, rather than the form of the action, determines the applicable statute of limitations." *King v. Terry*, 805 N.E.2d 397, 400 (Ind. Ct. App.2004). When a defendant asserts a defense based on the statute of limitations, it must first make a prima facie showing that the action was commenced outside the statutory period. *V. Ganz Builders*, 59 N.E.3d at 1032 (citing *Stickdorn v. Zook,* 957 N.E.2d 1014, 1021 (Ind. Ct. App. 2011)).

> This burden is satisfied by demonstrating "(1) the nature of the plaintiff[']s action, so that the relevant statute of limitations period may be identified; (2) the date the plaintiff's cause of action accrued; and (3) the date the cause of action was brought, being beyond the relevant statutory period."

*Id.* (quoting *McMahan v. Snap On Tool Corp.*, 478 N.E.2d 116, 120 (Ind. Ct. App. 1985)).

[16] Whether a statute of limitations defense is applicable is generally a question of law. *Davis v. Shelter Ins. Companies*, 957 N.E.2d 995, 997 (Ind. Ct. App. 2011), *trans. denied*. The question of which statute of limitations applies is a matter of statutory construction, *see Ferguson v. Modern Farm Systems, Inc.*, 555 N.E.2d 1379 (Ind. Ct. App. 1990), *trans. denied,* which is also a question of law. *In re*

*J.R.*, 98 N.E.3d 652, 654 (Ind. Ct. App. 2018), *abrogated on other grounds by In re M.S.*, __N.E.3d __, 2020 WL 830070 (Ind. 2020). Further, the determination of when a cause of action accrues is generally a question of law. *Gittings v. Deal,* 109 N.E.3d 963, 972 (Ind. 2018), *reh'g denied* (citing *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009)).[6] We review questions of law de novo. *J.R.*, 98 N.E.3d at 654.

[17] The trial court here concluded that the six-year statute of limitations for actions on unwritten contracts found in Indiana Code section 34-11-2-7 applied. This statute provides: "The following actions must be commenced within six (6) years after the cause of action accrues: . . . (1) Actions on accounts and contracts not in writing[.]"

[18] Sollers Point agrees that a six-year statute of limitations is applicable but argues that the applicable statute of limitations is Indiana Code section 34-11-3-1, which provides: "In an action brought to recover a balance due upon a mutual, open, and current account between the parties, the cause of action is considered to have accrued from the date of the last item proved in the account on either side." Sollers Point claims that Zeller's suit is a claim on such a "mutual, open, and current account" and that, according to the 2011 Invoice, the last work performed on the account took place on February 16, 2009. Taking February 16, 2009 as the day the cause of action began to accrue, Sollers Point contends

---

[6] The question of when a cause of action accrues can involve questions of fact, such as whether fraudulent concealment tolled the applicable statute of limitations. *Id.* (citing *Lyons v. Richmond Cmty. Sch. Corp.*, 19 N.E.3d 254, 262 (Ind. 2014)); *Hughes v. Glaese*, 659 N.E.2d 516, 521–22 (Ind. 1995)).

that Zeller had until February 16, 2015 to commence its cause of action but did not do so until July 10, 2015, approximately five months later. We disagree.

[19]     Specifically, we disagree that the Flood Event Account constituted a "mutual, open, and current" account.

> An "open account" is an account with a balance which has not been ascertained and is kept open in anticipation of future transactions. A defining characteristic of an open account is that services are recurrently granted over a period of time. Thus, an open account is similar to a line of credit.

1 Am. Jur. 2d *Accounts and Accounting* § 4 (footnotes omitted). This definition would appear to apply to the Flood Event Account, as the account was kept open in anticipation of future transactions relating to the flood cleanup and repair. But even if we were to agree with Sollers Point that the Flood Event Account is an open account, the account also needs to be "mutual" and "current" for section 34-11-3-1 to apply.

> For a mutual and open account to exist, there must be a mutual relationship, that is, there must be reciprocity of dealing. A mutual open account is an open account where there are items debited and credited on both sides of the account rather than simply a series of transactions always resulting in a debit to one party and a credit to the other party; each party to a mutual account occupies both a debtor and a creditor relation with regard to the other party. *Thus, an account is generally not considered mutual if all the items are on one side*.

*Id.* at § 5 (emphasis added) (footnotes omitted); *see also Account*, Black's Law Dictionary (11th ed. 2019) (defining "mutual account" as "[a]n account

showing mutual transactions between parties, as by showing debits and credits on both sides of the account.").

[20] Here, all of the items are on one side. That is, Zeller charged Sollers Point for the various items related to the flood cleanup, and all of the transactions resulted in a debit to one party and a credit to the other party. Sollers Point and Zeller are not both a debtor and creditor in relation to one another. Their relationship does not include a reciprocity of dealing: Zeller performs work, and Sollers Point pays for the work. Because the Flood Event Account is not an open, *mutual*, and current account, section 34-11-3-1 does not apply.

[21] Instead, we agree with the trial court that the Flood Event Account is an account stated. As we summarized in *Jackson v. Trancik*:

> An account stated is an agreement between the parties that all items of an account and balance are correct, together with a promise, express or implied, to pay the balance. An account stated operates as a new contract without the need for renewed consideration, and the plaintiff does not need to plead and prove the creation and performance of each contract underlying the account. An agreement that the balance is correct may be inferred from delivery of the statement together with the account debtor's failure to object to the amount of the statement within a reasonable time. When a debtor fails to object to an account until after a lawsuit is filed, such will generally be considered a failure to object within a reasonable time and will support an inference of the debtor's implied agreement that the account balance is correct.

953 N.E.2d 1087, 1091 (Ind. Ct. App. 2011) (citations and internal quotations omitted); *see also Account*, Black's Law Dictionary (11th ed. 2019) (defining "account stated" as "[a] balance that parties to a transaction or settlement agree on, either expressly or by implication.").

[22] Viewing the evidence favorable to the trial court's judgment, there is ample evidence to support its conclusion that Sollers Point did not object to the 2011 Invoice within a reasonable time. As noted by Zeller, Sollers Point's building manager at the time the invoice was sent, William Majors ("Majors"), admitted that he had received the 2011 Invoice from Zeller and found it to be in good order. He therefore asked his assistant to prepare a purchase order to send to Sollers Point's home office. Majors had no complaint with the 2011 Invoice. Michael Cunningham ("Cunningham"), who replaced Majors as building manager, was unaware of any objection to the 2011 Invoice. The only evidence of any objection to the 2011 Invoice was the testimony of Sollers Point representative David Gordon ("Gordon"), who testified that, shortly before the lawsuit was filed in July 2014, he spoke with Mark Zeller regarding the non-payment of the 2011 Invoice. We agree with the trial court that waiting over three years to object to the 2011 Invoice was not reasonable. Therefore, Zeller's suit on the Flood Event Account was an action on an account stated.

[23] The question then becomes when the cause of action for an account stated accrued. The general rule is that "the right to sue on an account stated accrues when the account is stated." 1A C.J.S. *Account Stated* § 56; *See also* 54 C.J.S. *Limitations of Actions* § 212 ("[W]here an account has been settled and stated and

a balance agreed on, a new cause of action is thereby created and the statute of limitations runs from the date of the settlement or agreement."). Here, the account was not stated until December 21, 2011—the date the 2011 Invoice was submitted to Sollers Point. Zeller's action was filed on July 10, 2014, well within the applicable six-year statute of limitations. *See Kadrmas, Lee & Jackson, P.C. v. Bolken*, 508 N.W.2d 341, 343 (N.D. 1993) ("The statute of limitations for an action to collect an account stated accrues on the date when the statement is made[.]"); *Toth v. Mansell*, 566 N.E.2d 730, 735 (Ill. App. Ct. 1990) (holding that plaintiff's cause of action accrued when an open account becomes an account stated by virtue of the debtor's receipt of a statement without objection).[7]

[24] We therefore conclude that the trial court did not err by rejecting Sollers Point's claim that the applicable six-year statute of limitations barred Zeller's recovery for work it performed as a result of the flood event.

---

[7] In its reply brief, Sollers Point argues that Zeller cannot rely on a theory of an account stated unless the requirements of Indiana Code section 34-11-9-1 have been met. This statute provides:

> An acknowledgment or promise is not evidence of a new or continuing contract, for the purpose of taking the case out of the operation of this article, unless the acknowledgment or promise is:
> (1) in writing; and
> (2) signed by the party to be charged by the acknowledgment or promise.

Ind. Code § 34-11-9-1. Sollers Point did not present an argument regarding this statute in its appellant's brief, and its argument regarding this statute is therefore waived. *See Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) ("The law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived."). Waiver notwithstanding, we do not view the 2011 Invoice as an acknowledgement or promise. The 2011 Invoice was a request for payment by Zeller. Sollers Point did not issue the Invoice as a promise to pay or to acknowledge its obligation to pay the Invoice. Indiana Code section 34-11-9-1 is therefore inapposite.

### III. Pre-Judgment Interest

Lastly, Sollers Point argues that the trial court erred in awarding Zeller pre-judgment interest. In awarding pre-judgment interest, the trial court relied upon Ind. Code § 24-4.6-1-103, which provides that "[i]nterest at the rate of eight percent (8%) per annum shall be allowed . . . from the date an itemized bill shall have been rendered and payment demanded on an account stated . . . ." Ind. Code § 24-4.6-1-103(b).

> An award of pre-judgment interest in a breach of contract action is warranted if the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable. The test for determining whether an award of pre-judgment interest is appropriate is whether the damages are complete and may be ascertained as of a particular time. An award of prejudgment interest is proper when the trier of fact does not have to exercise judgment in order to assess the amount of damages. Therefore, an award of pre-judgment interest is generally not considered a matter of discretion.

*WESCO Distribution, Inc. v. ArcelorMittal Ind. Harbor LLC*, 23 N.E.3d 682, 714 (Ind. Ct. App. 2014) (citations and internal quotation marks omitted); *see also Bopp v. Brames*, 713 N.E. 2d 866, 872 (Ind. Ct. App. 1999) (holding that damages that are the subject of a good faith dispute cannot support an award of pre-judgment interest), *trans. denied*.

Sollers Point claims that the damages in question were, in fact, the subject of a good faith dispute and that the trial court exercised its judgment in order to assess the amount of damages. Sollers Point specifically notes that the trial

court did not award Zeller the full $44,996.44 it sought as damages. Instead, the trial court agreed with Sollers Point that it was unreasonable for Zeller to wait until the 2011 Invoice to charge Sollers Point for a DC drive purchased in 2004 and for refurbishing elevator doors in 2005. The trial court accordingly deducted $18,267.44 from the amount claimed, awarding Zeller $26,729. Sollers Point argues that an award of pre-judgment interest was therefore improper.

[27] Zeller counters by arguing that, even though the trial court excluded some of the items Zeller claimed from the award of damages, the court, acting as the trier of fact, did not have to exercise its judgment in determining the amount of damages. That is, the trial court simply subtracted the items it excluded from the award and, once this was done, awarded the damages on the remaining items. Zeller therefore claims that the trial court did not truly exercise its judgment. We agree.

[28] This is not a case where the trier of fact exercised nuanced judgment in determining the damages. The trial court simply engaged in a mathematical calculation. "'Where the plaintiff's loss is complete and ascertainable at a particular time through fixed rules of evidence and accepted standards of valuation, the plaintiff's damages can be computed with reasonable precision and prejudgment interest must be awarded thereon to fully compensate the plaintiff.'" *Washington Cty. Mem'l Hosp. v. Hattabaugh*, 717 N.E.2d 929, 933–34 (Ind. Ct. App. 1999) (quoting *Harlan Sprague Dawley, Inc. v. S.E. Lab Group, Inc.*, 644 N.E.2d 615, 619 (Ind. Ct. App. 1995), *trans. denied*). We therefore affirm

the trial court's award of pre-judgment interest. *See Burns Const., Inc. v. Valley Concrete*, 163 Ind. App. 154, 156, 322 N.E.2d 404, 406 (1975) (holding that trial court did not err in awarding interest on account stated where monthly statements were sent and no objection was lodged thereto until months later).

# Conclusion

[29] The trial court lacked jurisdiction to rule on Zeller's motion to correct error, and we reverse the trial court's order granting this motion. The trial court did not err by concluding that Zeller's claims were not barred by the applicable statute of limitations, nor did the trial court err in awarding pre-judgment interest. We therefore affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

[30] Affirmed in part, reversed in part, and remanded.

Kirsch, J., and Bailey, J., concur.